BRIAN M. BOYNTON
Acting Assistant Attorney General
BRIAN D. NETTER
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
MICHAEL P. CLENDENEN
STEPHEN EHRLICH
CHARLES E.T. ROBERTS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
100 L Street, NW
Washington, DC 20005
Tel.: (202) 305-9803
Email: stephen.ehrlich@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>Janet Yellen, in her official capacity as Secretary of the Treasury, *et al.*,<br><br>Defendants. | Case No. 2:21-cv-00514-DJH<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO ARIZONA'S MOTION FOR PRELIMINARY INJUNCTION** |

# INTRODUCTION

On May 12, 2021, Defendants notified the Court of a decision in *Ohio v. Yellen*, No. 1:21-cv-181, 2021 WL 1903908 (S.D. Ohio May 12, 2021), denying a preliminary injunction in a similar case. ECF No. 39. "In light of that court's discussion," this Court ordered "additional, simultaneous briefing . . . on whether Plaintiff's requested preliminary injunction would redress the alleged harm." ECF No. 42. Defendants agree with the *Ohio* court's conclusion that a preliminary injunction will not redress the State's harm and that preliminary-injunctive relief must therefore be denied. More fundamentally, however, the Ohio court's reasoning highlights the jurisdictional flaws in this case: Arizona lacks standing to bring a facial, pre-enforcement challenge and this case is not ripe for review.

# ARGUMENT

The *Ohio* court was correct that, in these challenges to the American Rescue Plan Act, a preliminary injunction would not redress any irreparable harm. In *Ohio*, the court found that, if the State was entitled to additional "clarity" prior to certifying that it would comply with the terms of the grant, then the lack of clarity was an injury-in-fact. 2021 WL 1903908, at *8–11. But "to qualify for the 'extraordinary remedy' of a preliminary injunction," the court noted, the State "must show that the requested injunctive relief will prevent or terminate [an] ongoing harm." *Id.* at *14 (citation omitted). In *Ohio*, the State sought to preliminarily enjoin the Secretary of the Treasury from exercising her recoupment authority against Ohio. *Id.* But "there is no reason to believe that the Secretary will exercise those powers any time soon." *Id.* So "[a]n Order telling the Secretary not to do that which the Secretary has no current ability—or intent—to do, and likely will not be in a position to at any time soon . . . does not avoid any harm that the State is likely to encounter during the pendency of the preliminary injunction." *Id.*

Arizona's request for preliminary relief suffers from the same flaws. Like Ohio, Arizona seeks a preliminary injunction prohibiting the Secretary of the

Treasury from exercising her recoupment powers under the offset provision. *See* PI Mot. 3, ECF No. 11. But "there is no reason to believe that the Secretary will exercise those powers any time soon." *Ohio*, 2021 WL 1903908, at *14. Arizona submitted its certification to Treasury on May 21, 2021. In that certification, Arizona agreed to comply with the terms of the statute and the Rule,[1] and the State received its first payment of over $2 billion on May 28. Arizona has not alleged (let alone proved) that it has violated its agreement, or even that it is contemplating violating that agreement, by using Rescue Plan funds to offset a net-tax-revenue reduction resulting from a change in state law.[2] There are no foreseeable recoupment proceedings against Arizona that an injunction would prevent.

The reasoning of the *Ohio* court also supports Defendants' arguments that, based on the factual circumstances present here, Arizona lacks standing and offers no ripe dispute. In *Ohio*, the court found that the only theory sufficient to support standing was the State's claim that it needed information in order to decide whether to submit a certification. 2021 WL 1903908, at *8–11. Here, Arizona has already submitted its certification and received over $2 billion. Arizona's remaining theories of injury fail for the reasons stated in *Ohio*: there are no imminent recoupment proceedings, both because Arizona has not announced any intention to misuse Rescue Plan funds to offset a net-tax-revenue reduction resulting from a change in state law and because, even if Arizona were to misuse Rescue Plan funds in this way, the Secretary of the Treasury may exercise her

---

[1] Notice of Interim Final Rule, ECF No. 35; 86 Fed. Reg. 26,786 (May 17, 2021) ("the Rule").

[2] In reply, Arizona notes that the Arizona Legislature passed S.B. 1752, which simply conforms certain Arizona tax laws with federal tax laws. *See* Pl.'s Reply 5, ECF No. 32. But Treasury explained long ago that such conforming changes do not run afoul of the offset provision. *See* Treasury Statement on State Fiscal Recovery Funds and Tax Conformity (Apr. 7, 2021), https://go.usa.gov/xHW6R. And that position has since been codified in the Rule. *See* 86 Fed. Reg. at 26,808. Moreover, Arizona has nowhere explained how S.B. 1752 impacts its net tax revenue or even suggested that it might impermissibly offset any reduction in net tax revenue with Rescue Plan funds.

enforcement discretion not to seek recoupment. So Arizona lacks standing. Relatedly, Arizona's pre-enforcement challenge is not ripe. Without any foreseeable recoupment proceedings, Arizona cannot demonstrate any "concrete action applying [Treasury's] regulation to [Arizona's] situation in a fashion that harms or threatens to harm [it]." *Id.* at 7 (citation omitted). These realities led another district court to dismiss that State's similar challenge to the offset provision. *Missouri v. Yellen*, 2021 WL 1889867, at *3–5 (E.D. Mo. May 11, 2021).

Arizona largely ignores these arguments (and binding precedent), relying on shifting theories of standing in an attempt to establish jurisdiction. But no amount of contrivance can change the fact that Arizona is concerned about recoupment proceedings that rest upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (citation omitted).

*First*, the State insists that the Court should adopt its misreading of the offset provision's plain text to find standing. Reply 3. But as explained, the offset provision does *not* prohibit cutting or changing any state taxes; it merely prohibits using new *federal funds* to offset a reduction in net tax revenue resulting from such changes. Opp'n 5; *Missouri*, 2021 WL 1889867, at *4. Arizona cannot establish standing by rewriting the statute, especially because Treasury has now issued regulations concerning enforcement of the offset provision that reject Arizona's misreading. *See Missouri*, 2021 WL 1889867, at *5; 86 Fed. Reg. at 26,807–11. And the State does not even attempt to show a net-tax-revenue reduction resulting from state tax-law changes, let alone any intent to use Rescue Plan funds to offset any such reduction. So there is no injury in fact or irreparable harm. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (requiring both intent to engage in a proscribed course of conduct and credible threat of enforcement for a pre-enforcement injury in fact).

*Second*, the State cannot rely on the merits of its ambiguity argument to show it has standing. Reply 3. As explained, Congress need only provide "clear notice" of the *existence* of a funding condition, *not* every possible application of that condition. PI Opp'n 11–13; *see Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002). And the offset provision (especially when considered alongside the Rule that Arizona has agreed to follow) provides more than sufficient clarity as to the nature of the condition. PI Opp'n 8–11. The State's assertion that Defendants failed to cite any case for these propositions is puzzling. Reply 3. Defendants cited numerous controlling and persuasive cases for each. PI Opp'n 8–13. Instead, it is Arizona that lacks any precedent supporting a party's standing to prematurely rewrite an accepted bargain before any imminent harm. "Requiring States to honor the obligations voluntarily assumed as a condition of federal funding before recognizing their ownership of funds simply does not intrude on their sovereignty." *Bell v. New Jersey*, 461 U.S. 773, 790 (1983).

*Third*, where, as here, only *new* federal funding is at issue, the State cannot show standing through coercion. Arizona relies entirely on *NFIB*, Reply 3–4, but everyone there agreed that "Congress could have made just the *new* funding provided under the ACA contingent on acceptance of the terms of the Medicaid Expansion." 567 U.S. at 687–88 (joint dissent); 567 U.S. at 575–85 (plurality). The coercive threat there was loss of *preexisting* Medicaid funding. Here, Arizona identifies no threat of loss, much less an imminent one. Indeed, the only potential loss is speculative: recoupment of misused funds far in the future.

*Fourth*, there are no unconstitutional conditions here. Reply 4. This is not a case about "denial of equal treatment" among bidders in a bargaining process. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). The offset provision applies equally to any State that, like Arizona, chooses to accept the funds.

*Fifth*, standing cannot be based on Arizona's supposed diversion of resources. Every funding condition imposes some compliance costs, yet courts have consistently identified enforcement proceedings, should they ever occur, as the proper context for addressing a State's challenge to grant conditions. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006); *Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 669 (1985); *Bennett v. New Jersey*, 470 U.S. 632, 637 (1985). And here, the Rule allows States to use Rescue Plan funds to cover administrative costs, 86 Fed. Reg. 26,822, so Arizona need not divert any resources at all.

The State's remaining arguments about imminence and ripeness rely on the misreadings discussed above. Reply 4–6. Arizona can make any tax-law changes it wishes. *Missouri*, 2021 WL 1889867, at *4. What it may not do (and what it has failed to allege it is even considering doing) is use federal funds to pay for net-tax-revenue reductions resulting from those changes. *Id.* Unless Arizona intends to use federal funds for that purpose, there is no threat of enforcement, no standing, and no ripeness. *Driehaus*, 573 U.S. at 159; *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003). That is especially true for Arizona's pursuit of injunctive relief because the only "penalty" for a violation of the offset provision is recoupment of misused funds, and monetary penalties are the quintessential example of harm that is *not* irreparable. *See* Opp'n to PI Mot. 16.

In the end, though, even if there were standing, ripeness, and irreparable harm, the preliminary relief that Arizona seeks would not redress that harm because hypothetical recoupment proceedings are far in the future. *Ohio*, 2021 WL 1903908, at *14. The *Ohio* court was correct in that respect. This Court should follow that reasoning to its logical conclusion, join the *Missouri* court, and hold that it lacks jurisdiction to grant any form of relief, preliminary or otherwise.

## CONCLUSION

For the reasons explained above and in Defendants' opposition to Arizona's preliminary-injunction motion, the Court should deny Arizona's motion.

| | |
|---|---|
| DATED: June 18, 2021 | Respectfully submitted, |
| | BRIAN M. BOYNTON<br>Acting Assistant Attorney General |
| | BRIAN D. NETTER<br>Deputy Assistant Attorney General |
| | ALEXANDER K. HAAS<br>Director, Federal Programs Branch |
| | BRIGHAM J. BOWEN<br>Assistant Director, Federal Programs Branch |
| | /s/ *Stephen Ehrlich*<br>MICHAEL P. CLENDENEN<br>STEPHEN EHRLICH<br>CHARLES E.T. ROBERTS<br>Trial Attorneys<br>Civil Division, Federal Programs Branch<br>U.S. Department of Justice<br>1100 L Street, NW<br>Washington, DC 20005<br>Phone: (202) 305-9803<br>Email: stephen.ehrlich@usdoj.gov |
| | *Counsel for Defendants* |