**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)
Joseph A. Kanefield (No. 15838)
Brunn (Beau) W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
Wilson Freeman (admitted pro hac vice)
Robert J. Makar (No. 33579)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8958
Joe.Kanefield@azag.gov
Beau.Roysden@azag.gov
Drew.Ensign@azag.gov
Wilson.Freeman@azag.gov
Robert.Makar@azag.gov
*Attorneys for Plaintiff State of Arizona*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| STATE OF ARIZONA,<br>　　　　Plaintiff,<br>　v.<br>JANET YELLEN, in her official capacity as Secretary of the Treasury et al.;<br>　　　　Defendants. | No. 2:21-cv-00514-DJH<br><br>**SUPPLEMENTAL BRIEF** |

**INTRODUCTION**

On June 11, this Court requested that the parties address the decision in *Ohio v. Yellen*, No. 21-CV-181, 2021 WL 1903908 (S.D. Ohio May 12, 2021), and whether "Plaintiff's requested preliminary injunction would redress the alleged harm." As set forth below, a preliminary injunction would prevent irreparable harm and *Ohio* supports its issuance. *Ohio* involved virtually identical issues, and notably concluded that:

1) "[S]tanding and ripeness were present";
2) "Ohio ha[d] a substantial likelihood of showing that the ARPA violates the Spending Clause";
3) The Tax Mandate so was ambiguous that "the Court cannot fathom what it" meant and "the federal government was largely unwilling to hazard a guess as to what it meant either"; and
4) "[T]he (likely) unconstitutional ambiguity [of the Tax Mandate] … constitutes not only an injury in fact, but also irreparable harm." *Id.* at *11-14.

In the unique circumstances presented, however, the *Ohio* court concluded that a *preliminary* injunction would not provide effective relief, given (1) the narrowness of the injunction sought by Ohio, and (2) the fast-moving nature of the litigation (with *permanent* injunctive relief fully briefed a mere 30 days later). As explained below, however, those factors are not present here and this Court can craft a preliminary injunction that will provide effective relief. *Ohio* accordingly is no obstacle. Indeed, it appears likely that the *Ohio* court will soon grant permanent injunctive relief, which would affirmatively support the State's claims.

**ARGUMENT**

**I.    This Court Can Grant Effective Preliminary Injunctive Relief And *Ohio* Stands As No Obstacle To Doing So**

The May 12 *Ohio* decision arose in a unique context: Ohio was seeking narrow relief—disclaiming any injunction broader than enjoining the Secretary's recoupment—and the case was moving so quickly that only permanent injunctive relief would address

1

the harms that the *Ohio* court recognized. Moreover, Ohio had not sought consolidation under Rule 65(a)(2), and instead elected for expedited briefs on final resolution of the case. *Ohio* is therefore not an obstacle to the State's motion here for three reasons.

*First*, this Court could either consolidate the preliminary injunction hearing with the merits under Rule 65(a)(2) or expedite proceedings, as the *Ohio* has done. Either course would obviate the issue flagged by this Court's June 11 order and would cause no prejudice to any party.[1]

*Second*, the issue in the *Ohio* case was created by the narrowness of the relief sought by Ohio: "The preliminary injunction that Ohio requests here is directed solely at the Secretary's exercise of her recoupment powers." *Ohio*, 2021 WL 1903908, at *14. Here, however, the State has sought a blanket injunction against any and all enforcement of the Tax Mandate. *See* Doc. 11-3.

This Court, unlike the *Ohio* one, accordingly has authority to craft effective *preliminary* injunctive relief that would prevent irreparable harm to the State. This Court could, for example, enjoin the Secretary from enforcing the Tax Mandate against any tax cut in place while the preliminary injunction is in place, even if that injunction is later reversed or dissolved. The Ninth Circuit notably crafted similarly flexible relief in *Mi Familia Vota v. Hobbs*, 977 F.3d 948 (9th Cir. 2020). There, this Court had entered a preliminary injunction that "extended the [voter] registration deadline by eighteen days to October 23, 2020." *Id.* at 951. Although the Ninth Circuit concluded that the injunction "was an obvious abuse of discretion,"[2] the Court nonetheless held that it would permit anyone that had registered under the terms of that defective injunction to vote and further

---

[1] On June 17, this Court denied the State's request to consolidate under Rule 65(a)(2) as "untimely," as it was "was filed one week before oral argument." Doc. 46. This Court has authority to consolidate *sua sponte*, however. *See* Charles Alan Wright et al, 11A Fed. Prac. & Proc. Civ. § 2950 (5th ed.) ("[T]he trial court can transform a preliminary-injunction hearing into a consolidated hearing at any time and may do so on its own motion."). Moreover, Rule 65(a)(2) expressly permits consolidation even "*after* beginning the hearing on a motion for a preliminary injunction." Fed. R. Civ. P. 65(a)(2) (emphasis added). This Court could thus consolidate under Rule 65(a)(2) even after the June 22 hearing.

[2] *Id.* at 955 (Bybee, J., concurring); *accord id.* at 952-53 (majority opinion) (recognizing four independent reasons why order was likely an abuse of discretion).

even provided "a two-day grace period." *Id.* at 954-55. The Ninth Circuit further observed that in *Andino v. Middleton*, 141 S.Ct. 9 (Oct. 5, 2020), the Supreme Court had provided that "'any ballots cast before this stay issues and received within two days of this order may not be rejected for failing to comply with the witness requirement.'" *Mi Familia Vota*, 977 F.3d at 954 (quoting *Andino*). These cases thus make clear that the equitable powers of federal courts extends to issuing injunctions blessing conduct taken under their auspices even if the injunction is later stayed or vacated. This Court accordingly could enjoin the Secretary from enforcing the Tax Mandate in any form against tax cuts that are in effect during the pendency of the preliminary injunction—which would squarely remedy the irreparable harm that the *Ohio* court recognized would occur under the Tax Mandate (but would not be remedied under Ohio's more-limited request for relief).

Similarly, and in addition, this Court could craft a preliminary injunction that permits the State to certify under ARPA with the "indirectly offset" aspect of the Tax Mandate preliminarily enjoined, with a proviso that if the preliminary injunction is subsequently reversed, dissolved, or not converted into permanent injunctive relief, then the State could withdraw its certification and forego future ARPA funds. Such relief would give the State critical certainty as to what the legal effect of its certification would be—which, absent judicial construction, is woefully unclear. This lack of clarity was so stark that the *Ohio* court "c[ould] not fathom what it would mean to "indirectly offset a reduction in the net tax revenue." 2021 WL 1903908, at *12. And then, if the clarity provided by the binding construction embedded in a preliminary injunction is later dissolved, the State should be permitted to withdraw a certification made with the reassurance provided by that preliminary injunction no longer in place.

*Third*, the *Ohio* court was addressing the State's injury under a very different timeframe and different factual circumstances. The *Ohio* litigation is notably moving much faster than this litigation: although Ohio filed its motion for a preliminary injunction only 19 days before the State, the *Ohio* court resolved that motion more than a month ago on May 12. Similarly, permanent injunctive relief has now been fully briefed in the *Ohio* case;

a mere 30 days after that May 12 decision. In that posture, a *preliminary* injunction in the extremely short window between May 12 and the *Ohio* court's likely imminent decision on permanent injunctive relief was unlikely to prevent irreparable harm (particularly given the narrowness of the relief sought).

None of that is true here: there is no schedule for briefing permanent injunctive relief, and any preliminary injunctive relief is therefore likely to be in effect for longer than the short time-window at issue in the *Ohio* case. Indeed, the Arizona Legislature is currently attempting to pass a budget *right now* in the shadow of the Tax Mandate. *See, e.g.*, Bob Christie, *Arizona Legislature still stuck on budget terms after hiatus*, Fox10 Phoenix (Jun. 12, 2021), https://www.fox10phoenix.com/news/arizona-legislature-still-stuck-on-budget-terms-after-hiatus1. Without knowing the actual effect/validity of the Tax Mandate, this is extremely difficult to do. But removing the threat of enforcement during the pendency of these debates would provide valuable clarity, even if it did not provide guaranteed protection.

For all of these reasons, this Court could craft effective preliminary injunctive relief that would prevent at least some irreparable harm (the existence of which the *Ohio* court already found), and the *Ohio* decision is no hindrance to the preliminary injunction that the State has requested in this context.

**II.    *Ohio* Affirmative Supports All Other Aspects Of The State's Motion.**

It is also worth observing that the Secretary's reliance on the *Ohio* decision (Doc. 39) as *supporting* her arguments is a demonstration of cherry-picking that is near peer-less in its audacity. Conspicuously absent in her notice is any acknowledgment of the *Ohio* court's holdings that Ohio had Article III standing, that it challenge was ripe, and that Ohio was likely to prevail on the merits and would suffer irreparable harm from the Tax Mandate. Significantly, the *Ohio* court determined:

- The merits were not "particularly close." *Ohio*, 2021 WL 1903908, at *1.
- "[N]ot only does the Constitution require Congress to tell States that there *are* conditions, but Congress must also tell States *what* those conditions are." *Id.* at *5.

4

- "It is Congress *passing* the Act, not the State *accepting* the money, that violates the Constitution…. So, if the ARPA violates the Spending Clause, that violation already has occurred." *Id.* at *7.
- "If Ohio is correct on the merits of its Spending Clause claim…, then Congress has fallen short in delivering the constitutionally required clarity. If so, Ohio suffered an injury in its role as sovereign." *Id.* at *8.
- "Moreover, as part of that budgeting process, Ohio was (and is) considering changes to its tax laws, and a lack of certainty as to the consequences … had (and still has) an immediate impact on the state." *Id.* "Being told to wait for the federal government to act provides no relief on either front, and does nothing to avoid the injury in fact." *Id.*
- In *NFIB v. Sebelius*, 567 U.S. 519 (2012), "not a single one of the Justices thought that standing provided an impediment to reaching those merits," even though "States were challenging, in 2012, an amendment to the Medicaid funding statute … that would impose financial consequences *starting in 2014*." *Id.* at *10.
- "The issue here is not that the Secretary may seek recoupment in the future—a dispute that may not be ripe. Rather, the issue is that Ohio alleges it does not have the constitutionally-required clarity at present." *Id.*
- [T]he federal government claimed that the Spending Clause does not require that the *substance* of the conditions be clear, but merely that the statute make clear that conditions *exist*. Wrong. As noted above, Supreme Court and Sixth Circuit precedent directly reject that view." *Id.* at *12.

\* \* \* \* \*

The upshot is that what the Secretary portrayed to this Court as a victory is, in reality, likely little more than a short-term stay of execution—which even *now* glosses over completely Ohio's victory on standing and ripeness, as well as the *Ohio* court's conclusion that Ohio (and by extension Arizona here) was likely to prevail on the merits. To the extent that *Ohio* is a victory for the Secretary at all, it is a likely Pyrrhic and fleeting one.

RESPECTFULLY SUBMITTED this 18th day of June, 2021.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By <u>s/ Drew C. Ensign</u>
    Joseph A. Kanefield (No. 15838)
    Brunn W. Roysden III (No. 28698)
    Drew C. Ensign (No. 25463)
    Wilson Freeman (admitted pro hac vice)
    Robert J. Makar (No. 33579)
    *Assistant Attorneys General*

*Attorneys for Plaintiff Arizona*