BRIAN M. BOYNTON
Acting Assistant Attorney General
BRIAN D. NETTER
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
MICHAEL P. CLENDENEN
STEPHEN EHRLICH
CHARLES E.T. ROBERTS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
100 L Street, NW
Washington, DC 20005
Tel.: (202) 305-9803
Email: stephen.ehrlich@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>Janet Yellen, in her official capacity as Secretary of the Treasury, *et al.*,<br><br>Defendants. | Case No. 2:21-cv-00514-DJH<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO ARIZONA'S MOTION FOR FINAL JUDGMENT** |

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................1

I. Arizona lacks Article III standing. ............................................1

II. Arizona cannot succeed on the merits. .....................................5

    A. The offset provision more than satisfies the Ninth Circuit's standard for Spending Clause unambiguity ................5

    B. The Rescue Plan is not coercive or commandeering. ..................9

III. Arizona has not satisfied the remaining three requirements for obtaining a permanent injunction. ...........................11

CONCLUSION ...................................................................................11

# TABLE OF AUTHORITES

**Cases**

*AFMS LLC v. United Parcel Serv. Co.*,
  105 F. Supp. 3d 1061 (C.D. Cal. 2015) ................................................................. 3

*Air Line Pilots Ass'n v. Alaska Airlines, Inc.*,
  898 F.2d 1393 (9th Cir. 1990) ........................................................................... 11

*Ariz. Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ........................................................................... 11

*Arlington Cent. Sch. Dist. Bd. v. Murphy*,
  548 U.S. 291 (2006) ............................................................................................ 6

*Bell v. New Jersey*,
  461 U.S. 773, 790 (1983) .................................................................................... 3

*Bennett v. Ky. Dep't of Educ.*,
  470 U.S. 656 (1985) ....................................................................................... 1, 8

*Bennett v. New Jersey*,
  470 U.S. 632 (1985) ............................................................................................ 1

*Benning v. Georgia*,
  391 F.3d 1299 (11th Cir. 2004) .......................................................................... 6

*Brinkman v. Schriro*,
  2013 WL 11311260 (D. Ariz. Mar. 20, 2013), *aff'd*, 616 F. App'x 227
  (9th Cir. 2015) ..................................................................................................... 6

*Bucklew v. Precythe*,
  139 S. Ct. 1112 (2019) ........................................................................................ 5

*California v. Texas*,
  141 S. Ct. 2104 (2021) ........................................................................................ 4

*Carney v. Adams*,
    141 S. Ct. 493 (2020) ................................................................................................ 2

*Charles v. Verhagen*,
    348 F.3d 601 (7th Cir. 2003) .................................................................................. 6, 7

*Children's Hosp. Ass'n of Texas v. Azar*,
    933 F.3d 764 (D.C. Cir. 2019) ..................................................................................... 8

*City of Los Angeles v. Barr*,
    929 F.3d 1163 (9th Cir. 2019) ............................................................................. 8, 10

*Cutter v. Wilkinson*,
    423 F.3d 579 (6th Cir. 2005) ...................................................................................... 6

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .................................................................................................... 1

*Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999) ................................................................................................ 6, 8

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) .................................................................................................... 1

*Edmo v. Corizon, Inc.*,
    935 F.3d 757 (9th Cir. 2019) ...................................................................................... 1

*F/W PBS v. City of Dallas*,
    493 U.S. 215 (1990) .................................................................................................... 3

*Garcia v. Ryan*,
    2018 WL 10128046 (D. Ariz. Oct. 9, 2018) ............................................................... 4

*Gruver v. La. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*,
    959 F.3d 178 (5th Cir. 2020) ...................................................................................... 9

*Irving Indep. Sch. Dist. v. Tatro*,
    468 U.S. 883 (1984) .................................................................................................... 8

*Isbell v. Ryan*,
   2011 WL 6050337 (D. Ariz. Dec. 6, 2011) ............................................................................ 6

*Jackson v. Birmingham Bd. of Educ.*,
   544 U.S. 167 (2005) ....................................................................................................... 6, 8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................ 1

*Maryland v. King*,
   567 U.S. 1301 (2012) ....................................................................................................... 11

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) ....................................................................................................... 2, 3

*Mayweathers v. Newland*,
   314 F.3d 1062 (9th Cir. 2002) ................................................................................. 6, 7, 10

*Miss. Comm'n on Env't Quality v. EPA*,
   790 F.3d 138 (D.C. Cir. 2015) ............................................................................................ 9

*Missouri v. Yellen*,
   No. 4:21-cv-376, 2021 WL 1889867 (E.D. Mo. May 11, 2021) .................................... 2, 4

*Munn v. Illinois*,
   94 U.S. 113 (1876) ........................................................................................................... 11

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
   567 U.S. 519 (2012) .......................................................................................... 3, 9, 10, 11

*Ohio v. Yellen*,
   2021 WL 2712220 (S.D. Ohio July 1, 2021) ...................................................................... 5

*Organista v. Sessions*,
   2018 WL 776241 (D. Ariz. Feb. 8, 2018) ........................................................................ 11

*Pennhurst State Sch. & Hosp. v. Halderman*,
   451 U.S. 1 (1981) ................................................................................................................ 5

*Petit v. U.S. Dep't of Educ.*,
   675 F.3d 769 (D.C. Cir. 2012) ................................................................................. 8

*Religious Sisters of Mercy v. Azar*,
   --- F. Supp. 3d ---, 2021 WL 191009 (D.N.D. Jan. 19, 2021) ................................. 9

*Rostker v. Goldberg*,
   453 U.S. 57 (1981) ................................................................................................. 1

*South Dakota v. Dole*,
   483 U.S. 203 (1987) ............................................................................................. 10

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ........................................................................................... 1, 2

*Texas v. United States*,
   523 U.S. 296 (1998) ............................................................................................... 4

*Trump v. New York*,
   141 S. Ct. 530 (2020) .......................................................................................... 1, 2

*United States v. Butler*,
   297 U.S. 1 (1936) ................................................................................................. 10

*United States v. Miami University*,
   294 F.3d 797 (6th Cir. 2002) ................................................................................. 8

*United States v. Morrison*,
   529 U.S. 598 (2000) ............................................................................................... 5

*Va. Dep't of Educ. v. Riley*,
   106 F.3d 559 (4th Cir. 1997) ................................................................................. 8

*White v. Linderman*,
   2013 WL 4496364 (D. Ariz. Aug. 22, 2013) ......................................................... 6

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ............................................................................................... 9

**Statutes**

42 U.S.C. § 802 ........................................................................................................*passim*

**Regulations**

86 Fed. Reg. 26,822 (May 17, 2021) ................................................................... 2, 4

**INTRODUCTION**

Converting Arizona's preliminary-injunction motion to a final-judgment motion makes more apparent the problems with its suit. For permanent-injunction purposes, Arizona cannot demonstrate with evidence that this Court's has jurisdiction. Nor can Arizona show that the American Rescue Plan Act is unconstitutional on its face. A permanent injunction is an "extraordinary remedy never awarded as of right." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (reciting permanent-injunction factors). And invalidating an Act of Congress is "the gravest and most delicate duty that" federal courts are "called on to perform." *Rostker v. Goldberg*, 453 U.S. 57, 64 (1981) (quotation marks omitted). So this Court should be wary of enjoining portions of the Rescue Plan based on the State's speculative concerns about possible future disputes. Its motion should be denied.

**ARGUMENT**

### I. ARIZONA LACKS ARTICLE III STANDING.

In seeking judgment, Arizona must adduce actual evidence to support standing for each claim it presses. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). It has not done so.

The State's standing arguments—some raised for the first time after its reply and none grounded in evidence—cannot distract from two fundamental flaws: (1) the State lacks allegations or evidence demonstrating the concrete intent and credible threat of enforcement required for pre-enforcement standing; and (2) no other theory that Arizona now posits meets the State's burden. At bottom, Arizona lacks standing to press its premature and unripe claims. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *Trump v. New York*, 141 S. Ct. 530, 535–36 (2020). Instead, recoupment proceedings, should they ever occur, would be the proper forum to address a State's challenge to this grant condition. *Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 669 (1985); *Bennett v. New Jersey*, 470

U.S. 632, 637 (1985). Unless and until Treasury institutes those proceedings, Arizona cannot overcome the jurisdictional problems with its claims. *Missouri v. Yellen*, No. 4:21-cv-376, 2021 WL 1889867, at *1 (E.D. Mo. May 11, 2021).

*First*, Arizona makes no effort to satisfy *Driehaus*'s two required elements for pre-enforcement standing, effectively conceding that it cannot. Article III demands proof of a concrete intention to engage in conduct proscribed by the statute. *Driehaus*, 573 U.S. at 159; *see Carney v. Adams*, 141 S. Ct. 493, 495 (2020). Nowhere does Arizona state its intended uses of Rescue Plan funds, let alone that it has a concrete plan to impermissibly offset net-tax-revenue reductions resulting from changes in state law. *Missouri*, 2021 WL 1889867, at *4. Nor has Arizona demonstrated a credible threat of enforcement. *Driehaus*, 573 U.S. at 159. Not only does the State lack any facts to suggest such a threat, but the Rule[1] — which explains in detail how Treasury will enforce the offset provision — forecloses the possibility of recoupment based on Arizona's broad misreading of the statute. *Missouri*, 2021 WL 1889867, at *5. As the Court noted at oral argument, "these decisions are much further down the road so that the harm isn't really imminent; it's more along the lines of possible." Tr. 13–14; *see Trump*, 141 S. Ct. at 535–36 ("The Government's eventual action will reflect both legal and practical constraints, making any prediction about future injury just that — a prediction.").

*Second*, Arizona's three "main" standing theories (sovereignty, uncertainty, and coercion) and two additional theories (the Rule and diverting resources) are futile. Tr. 10; *see id.* 19–20, 22–23, 52–53. To begin, the State identifies no analogous case to support its novel harm-to-sovereignty theory. Tr. 10, 14, 18; *see* Defs.' Opp'n 6, ECF No. 31. As Defendants, the Rule, and the *Missouri* court have all stated: merely enacting a tax cut does not implicate — or violate — the offset provision. Defs.' Opp'n 5–6, ECF No. 31; 86 Fed. Reg. 26,786; *Missouri*, 2021 WL

---

[1] Notice, ECF No. 35; 86 Fed. Reg. 26,786 (May 17, 2021)

1889867, at *3–4. That provision does not implicate any sovereign interest in setting tax policy. *Missouri*, 2021 WL 1889867, at *4; *Bell v. New Jersey*, 461 U.S. 773, 790 (1983) ("Requiring States to honor the obligations voluntarily assumed as a condition of federal funding . . . simply does not intrude on their sovereignty."); *Massachusetts v. Mellon*, 262 U.S. 447, 479–80, 485–86 (1923).

Next, the State's uncertainty-as-injury theory is unsupported. As the Court recognized at argument, any such "harm"—premised on Arizona's uncertainty about accepting funds it has now accepted—is moot. Tr. 12–13. Arizona pivots to the residual uncertainty about making tax changes. Tr. 11–16; *see* Compl. ¶¶ 22, 39. But that purported injury does not "affirmatively appear in the record."[2] *F/W PBS v. City of Dallas*, 493 U.S. 215, 231 (1990). And it ignores that (a) the offset provision does not implicate every tax change, and (b) the Rule details how Treasury will implement the offset provision. So Arizona has more than sufficient information to understand the deal it has accepted. Tr. 19 (admitting that the "regulation makes clear what was not clear when we filed our complaint"). And again, Arizona cannot demonstrate a credible threat of enforcement because the State nowhere explains (much less proves) that it will misuse federal funds in a way that implicates the offset provision and the Rule.

Arizona's coercion theory based on *NFIB* fares no better. *See* Tr. 17; 49–50. There, States stood to lose *preexisting* funding if they declined new conditioned funding. Despite a lack of immediate consequences, harm was certain because

---

[2] In its fourth substantive brief, Arizona cites a local news article for the proposition that the State's current budget process is stalling "in the shadow of the [offset provision]." Supp. Br. 4, ECF No. 48. That article includes no mention of the Rescue Plan or the offset provision. Thus, the State bases this theory entirely on guesswork, while also conceding that "[i]t's hard to get inside the policymakers' heads and figure out exactly how [the offset provision's effects] play[] out in practice." Tr. 13. That cannot suffice for standing, especially because even a relevant news article would be inadmissible hearsay. *AFMS LLC v. United Parcel Serv. Co.*, 105 F. Supp. 3d 1061, 1070 (C.D. Cal. 2015).

States would either lose preexisting funds or would accept the new funding under threat of losing preexisting funds. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 575–85 (2012). Here, in contrast, the Rescue Plan did not threaten any preexisting funds. Unlike *NFIB*, any "harm" (*i.e.*, recoupment) is entirely uncertain for the reasons explained above. *See also* Tr. 51 (Arizona effectively conceding that the amount of funds is not coercive because recoupment is based on *misused* funds, if any, which is indeterminate at this time); Section II.B., *infra*.

The State's remaining theories (about the Rule and diverting resources) do not appear in the Complaint and should not be entertained. *Garcia v. Ryan*, 2018 WL 10128046, at *14 (D. Ariz. Oct. 9, 2018) (Humetewa, J.). But the lynchpin to both theories is Arizona's professed concern about compliance costs, *see* Resp. to Notice 1–2, ECF No. 49;[3] Tr. 19–20, 22–23, 52–53, which the State has not substantiated. And Arizona has not challenged the source of these supposed costs: the statutory provision requiring a "detailed accounting" of "all modifications to" its "tax revenue sources during the covered period," 42 U.S.C. § 802(d)(2), or the Rule itself. The Supreme Court recently rejected this exact standing theory—premised on harms from unchallenged statutory provisions—because it was not traceable to the provision at issue. *California v. Texas*, 141 S. Ct. 2104, 2119 (2021). The Rule also explicitly allows States to use Rescue Plan funds to cover reporting costs, 86 Fed. Reg. 26,822, so Arizona need not use its own resources at all.

Because this case "involves too remote and abstract an inquiry for the proper exercise of the judicial function," *Missouri*, 2021 WL 1889867, at *5 (quoting *Texas v. United States*, 523 U.S. 296, 301 (1998)), the Court should deny the State's motion and dismiss the Complaint.

---

[3] Arizona also misreads *Lujan* when it argues that it is "an 'object' of the Interim Rule" and therefore has standing. Resp. to Notice, 1–2. The Supreme Court in *Lujan* did not disturb the requirements for pre-enforcement standing discussed above and since reaffirmed by the Court in *Driehaus*.

## II. ARIZONA CANNOT SUCCEED ON THE MERITS.

Arizona fails to meet its heavy burden to show that the offset provision is "unconstitutional in all its applications." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019); *United States v. Morrison*, 529 U.S. 598, 607 (2000).

### A. The offset provision more than satisfies the Ninth Circuit's standard for Spending Clause unambiguity.

Precedent regarding Spending Clause unambiguity establishes that Congress must only make clear that acceptance of federal money obligates the States to comply with a condition.[4] In *Pennhurst*—the origin of the Spending Clause unambiguity requirement—the Supreme Court held that "if Congress intends to *impose a condition* on the grant of federal moneys, it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 24 (1981) (emphasis added). There, the statute provided money to States and contained a "bill of rights" provision specifying that mentally disabled citizens "have a right to appropriate treatment, services, and habilitation for such disabilities" to be provided "in the setting that is least restrictive of the person's personal liberty." *Id.* at 13. The Court held that these statements "represent general statements of federal policy, not newly created legal duties" and "in no way suggests that the grant of federal funds is 'conditioned' on a State's funding the rights described therein." *Id.* at 23. The *Pennhurst* Court then explicitly recognized that a State's obligations may be "largely indeterminate," so long as Congress gives "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" the condition. *Id.* at 25.

Numerous Spending Clause cases—in the Supreme Court, the Ninth Circuit, and other Circuits—all confirm that the existence of a condition is what ensures that States make "an informed choice" when accepting federal funds. *Id.*

---

[4] The *Ohio* court's contrary holding misreads governing precedent and misconceives the Spending Clause inquiry. *Compare* Section II. A. & Tr. 35–36, 39–42 *with Ohio v. Yellen*, 2021 WL 2712220, at *10–20 (S.D. Ohio July 1, 2021).

The Supreme Court itself has repeatedly affirmed that "there [i]s sufficient notice under *Pennhurst* where a statute ma[kes] clear that some conditions [a]re placed on the receipt of federal funds." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005); *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). And the Circuits have done the same, holding that the Spending Clause is satisfied where a "statute's *intention to impose a condition* is expressed clearly," even though the operation of a funding condition "is perhaps unpredictable." *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002); *Charles v. Verhagen*, 348 F.3d 601, 607–08 (7th Cir. 2003) ("[T]he exact nature of the conditions may be 'largely indeterminate,' provided that the *existence of the conditions* is clear . . . ." (emphasis added)); *Benning v. Georgia*, 391 F.3d 1299, 1307 (11th Cir. 2004); *Cutter v. Wilkinson*, 423 F.3d 579, 586 (6th Cir. 2005). Congress must only "make the existence of the condition itself—in exchange for the receipt of federal funds—explicitly obvious." *Mayweathers*, 314 F.3d at 1067.

Contrary to Arizona's fleeting argument, the same analysis still applies after *Arlington Central*. *See* Tr. 50. There, the Supreme Court examined whether the specific conduct at issue—payment of expert fees—clearly existed in the statute as a funding condition. *Arlington Cent. Sch. Dist. Bd. v. Murphy*, 548 U.S. 291, 296 (2006). As in *Pennhurst*, the Court performed a statutory analysis, determining that expert-fee payments were not a statutory funding condition because the statute's text was insufficiently broad to place States on notice that they might need to pay expert fees. *Id.* at 297–99. But nothing in *Arlington Central* changed the *Pennhurst* analysis applied in *Mayweathers*. That's why courts have continually followed the holding of *Mayweathers* long after *Arlington Central*. *See, e.g.*, *Brinkman v. Schriro*, 2013 WL 11311260, at *5 (D. Ariz. Mar. 20, 2013), *aff'd*, 616 F. App'x 227 (9th Cir. 2015); *White v. Linderman*, 2013 WL 4496364, at *8 (D. Ariz. Aug. 22, 2013); *Isbell v. Ryan*, 2011 WL 6050337, at *9 (D. Ariz. Dec. 6, 2011).

Here, Congress made abundantly clear that the acceptance of Rescue Plan funds obligates the State to comply with the offset provision, easily passing muster under binding Supreme Court and Ninth Circuit precedent. 42 U.S.C. § 802(c)(1) (delineating "[f]urther restriction[s] on the use of funds," including the offset provision, which governs a State's "use [of] the funds provided under this section"). But the offset provision provides far more notice than the Spending Clause requires, establishing not only the existence of a condition but the nature and scope of the condition. By its plain terms, the offset provision applies only when a State uses Rescue Plan funds to "offset" a reduction in "net" tax revenue resulting from changes in state law. 42 U.S.C. § 802(c)(2)(A); *see* Defs.' Opp'n 8–9 (describing the undisputed meaning of "net" and "offset"). Taken together, the statute's language simply ensures that States are not using federal funds to finance state tax cuts that decrease net tax revenue. For example, assuming no other changes, a State could not receive $2 billion in Rescue Plan funds, cut its income tax by an amount equal to $2 billion, and use the Rescue Plan funds to offset the revenue loss. That would be using Rescue Plan Funds to "directly" offset a net-tax-revenue reduction. 42 U.S.C. § 802(c)(2)(A). Similarly, again assuming no other changes, a State could not use Rescue Plan funds to replace $2 billion in planned state expenditures on COVID-19 testing and then use the $2 billion it had originally budgeted for that purpose to offset a $2 billion reduction in state income tax. That would be using Rescue Plan Funds to "indirectly" offset a net-tax-revenue reduction. *Id.* But States are free to offset such reductions by other means, including certain spending cuts.

Arizona's argument—that Congress itself must specify minute details of a funding condition—is wrong. *See* Tr. 50–52. "[I]t is simply impossible" for Congress to "delineate every instance in which a State may or may not comply with" the offset provision. *Charles*, 348 F.3d at 608; *Mayweathers*, 314 F.3d at 1067. As the Supreme Court has admonished, "every improper expenditure" need not be

"specifically identified and proscribed" in the statute. *Bennett*, 470 U.S. at 666; *Jackson*, 544 U.S. 167 at 183 (reiterating *Bennett*); *Davis*, 526 U.S. at 650 (same).

Imposing that unreachable standard would render unconstitutional numerous funding regimes, like Medicaid and education statutes. This is not hypothetical. Arizona says that agency regulations implementing Spending Clause statutes can *never* get *Chevron* deference because an "agency's power to fill in necessary details in this context could only arise if the Constitution were already violated." Pl.'s Reply 10. But courts have deferred to such regulations for decades. *See, e.g.*, *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 891–92 (1984) (Education of the Handicapped Act); *Children's Hosp. Ass'n of Texas v. Azar*, 933 F.3d 764, 770 (D.C. Cir. 2019) (Medicaid); *Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 778 (D.C. Cir. 2012) (IDEA); *United States v. Miami University*, 294 F.3d 797, 811-15 (6th Cir. 2002) (Family Educational Rights and Privacy Act). And Arizona's position cannot be squared with the Ninth Circuit's application of *Chevron* deference while simultaneously finding no Spending Clause violation. *City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019).

Instead, when *Pennhurst* (and the legion of other cases) are properly applied such that Congress must simply make clear that acceptance of federal funds obligates the State to comply with a condition, agency regulations have no bearing on the Spending Clause analysis. If a statutory funding condition exists, the implementing agency could regulate the details of the condition subject to the Administrative Procedure Act and the other typical constraints; if not, any agency regulation imposing funding conditions would be unauthorized by the statute. That is the upshot of the *Riley* case cited by Arizona. Tr. 53; *Va. Dep't of Educ. v. Riley*, 106 F.3d 559, 568 (4th Cir. 1997) (en banc) (reasoning that an agency could not, by regulation, act *ultra vires* by imposing spending conditions that did not exist as part of the statute). And, unlike Arizona's theory, that is consistent with the well-settled rule that Congress may confer decisionmaking authority on

agencies if it "lay[s] down by legislative act an intelligible principle." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001).

The Court should find the offset provision plainly within Congress's Spending Clause authority and reject Arizona's attempt to impose an unambiguity standard that would render a myriad of federal statutes unconstitutional.

### B. The Rescue Plan is not coercive or commandeering.

Originally, Arizona did not raise an independent coercion or anti-commandeering argument.[5] The State simply contended that a broad (and atextual) interpretation of the offset provision that "prohibit[s] any change in tax policy whatsoever that reduces tax revenue"—which Defendants affirmatively rejected in the Rule—would be "coercive." PI Mot. 12–16. But Arizona has now seemingly changed tack, emphasizing at oral argument that the offset provision is unconstitutionally coercive. Tr. 25. The State is wrong.

For starters, Congress has full "authority to condition the receipt of funds on the States' complying with restrictions on the use of those funds, because that is the means by which Congress ensures that the funds are spent according to its view of the 'general Welfare.'" *NFIB*, 567 U.S. at 580; Defs.' Opp'n 14. That is exactly what Congress has done here: titled "[f]urther restriction on the *use of funds*," the offset provision only applies to a State's "*use [of] the funds* provided under this section." 42 U.S.C. § 802(c)(2) (emphasis added). So a coercion analysis is inapplicable because Congress here is not "pressuring the States to accept policy changes" independent of the new federal funds. *NFIB*, 567 U.S. at 580; *Gruver v. La. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, 959 F.3d 178, 183–84 (5th Cir. 2020); *Miss. Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 179 (D.C. Cir. 2015); *Religious Sisters of Mercy v. Azar*, --- F. Supp. 3d ---, 2021 WL 191009, at *25 (D.N.D. Jan. 19, 2021), *appeal pending on other grounds*, No. 21-1890

---

[5] The parties agree that the inquiry under both the Spending Clause and the Tenth Amendment is the same. Defs.' Opp'n 15; PI Mot. 8 n.1.

(8th Cir.). Arizona is free to do what it wants with its own money or tax scheme, including cutting taxes, providing rebates, increasing spending, or cutting expenditures. *See* Defs.' Opp'n 9–10. The State must simply refrain from using the *federal* money to "directly or indirectly offset a reduction in net tax revenue" resulting from state tax-law changes.[6] 42 U.S.C. § 802(c)(2).

Even if the coercion analysis did apply here, Arizona would lose under *NFIB*. As Defendants previously explained, the key aspect of the Medicaid expansion that *NFIB* found to be coercive was that Congress "penalize[d] States that choose *not to participate* in that new program by taking away their *existing* Medicaid funding." *NFIB*, 567 U.S. at 585. Here, in stark contrast, there are no monetary consequences if a State chooses to decline the Rescue Plan funds. Defs.' Opp'n 14–16. Contrary to Arizona's contention, Tr. 26–27, the amount of funding at issue in *NFIB* was only relevant to the *preexisting* funding that would be withdrawn if States *declined* the Medicaid expansion. *Compare NFIB*, 567 U.S. at 582 (finding that a threatened loss of *preexisting* Medicaid funds—ten percent of States' overall budgets—was coercive) *with South Dakota v. Dole*, 483 U.S. 203, 211 (1987) (finding that a threatened five-percent loss of *preexisting* highway funds was not coercive). After all, "[t]hreat of loss, not hope of gain, is the essence of economic coercion." *United States v. Butler*, 297 U.S. 1, 81 (1936) (Stone, J., dissenting). And *all* Justices in *NFIB* agreed that, despite the amount of funding at issue, "Congress could have made just the *new* funding provided under the ACA contingent on acceptance of the terms of the Medicaid Expansion."

---

[6] Because the offset provision merely specifies how States may use the newly appropriated federal funds, it is, by definition, related to the purposes of the Act. *See* Defs.' Opp'n 10. Congress did not provide the Rescue Plan funds as a means to replace purposeful decreases in net tax revenue; it provided the money to help States economically recover from the pandemic in ways they otherwise could not. This is more than sufficient to meet the "low-threshold relatedness test" that the Ninth Circuit has called "not demanding." *City of Los Angeles*, 929 F.3d at 1175; *Mayweathers*, 314 F.3d at 1067. In fact, neither Arizona nor the Ninth Circuit have found a case that "struck down a condition on federal grants based on this relatedness prong." *City of Los Angeles*, 929 F.3d at 1175.

*NFIB*, 567 U.S. at 687–88 (joint dissent); *id.* at 576, 585 (plurality) (same). That holding defeats Arizona's claim that the sheer *amount* of offered funding is dispositive, regardless of whether it is being newly provided or eliminated. Notably, the offset provision is even more modest than the prospective funding condition that *NFIB* indicated was permissible: a State does not lose *all* of its Rescue Plan funding if it violates the offset provision, but only the amount of funds it uses as an improper offset. See 42 U.S.C. § 802(e)(1).

Arizona had "a legitimate choice whether to accept the federal conditions in exchange for federal funds." *NFIB*, 567 U.S. at 578. So its newfound coercion arguments should be rejected.

### III. ARIZONA HAS NOT SATISFIED THE REMAINING THREE REQUIREMENTS FOR OBTAINING A PERMANENT INJUNCTION.

Arizona will suffer no irreparable harm if its motion is denied because the State will have "an adequate remedy" if recoupment proceedings ever materialize. Defs.' Opp'n 16–17 (citing *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)). In contrast, an injunction would irreparably harm the United States because "[a]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). And "[i]f there is doubt, the expressed will of the legislature should be sustained." *Munn v. Illinois*, 94 U.S. 113 (1876).

### CONCLUSION

The Court should deny Arizona's motion and either dismiss the case or enter judgment for Defendants. *See Air Line Pilots Ass'n v. Alaska Airlines, Inc.*, 898 F.2d 1393, 1397 n.4 (9th Cir. 1990); *Organista v. Sessions*, 2018 WL 776241, at *3 (D. Ariz. Feb. 8, 2018).

DATED: July 7, 2021	Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

/s/ *Stephen Ehrlich*
MICHAEL P. CLENDENEN
STEPHEN EHRLICH
CHARLES E.T. ROBERTS
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-9803
Email: stephen.ehrlich@usdoj.gov

*Counsel for Defendants*