WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, et al.,<br><br>          Plaintiff,<br><br>v.<br><br>Janet Yellen, et al.,<br><br>          Defendants. | No. CV-21-00514-PHX-DJH<br><br>**ORDER** |

Pending before the Court is the State of Arizona's ("Arizona" or the "State") Motion for a Preliminary Injunction (Doc. 11). The Secretary of the Treasury (the "Secretary") filed a Response (Doc. 31), and Arizona filed a Reply (Doc. 32-1). After requesting and receiving additional briefing from both parties (Docs. 48; 47), the Court heard oral argument on the matter. The parties were then allowed a final round of briefing, which concluded on July 7, 2021 (Docs. 59; 60). With the parties' consent, the Court has consolidated the Motion with this decision on the merits (Doc. 55).[1]

**I.     Background**

The American Rescue Plan Act of 2021 ("ARPA") offers hundreds of billions of dollars to the States to support their response to the deadly and widespread COVID-19 pandemic. Broadly speaking, the funds are intended to support the States' response to the public health emergency, to assist essential workers, to support government services, and to invest in infrastructure. 42 U.S.C. § 802(c)(1). Arizona has accepted ARPA's offer and

---

[1] The Court notes that it also received several amicus briefs primarily in support of Arizona's position. (Docs. 26; 28; 29).

will receive about $4.7 billion, a significant amount of money considering Arizona's annual budget is about $12.4 billion.  (Docs. 1 at ¶ 40; 47 at 3).

Like many other federal grants, ARPA places restrictions and conditions on what the States may do once they accept the offered funds.  Here, Arizona challenges one ARPA restriction in particular:

> A State or territory shall not use the funds provided under this section or transferred pursuant to section 803(c)(4) of this title to either directly or indirectly offset a reduction in the net tax revenue of such State or territory resulting from a change in law, regulation, or administrative interpretation during the covered period that reduces any tax (by providing for a reduction in a rate, a rebate, a deduction, a credit, or otherwise) or delays the imposition of any tax or tax increase.

42 U.S.C. § 802(c)(2)(A) (the "Restriction").  Arizona argues this language is ambiguous, in that it does not know "what it means to 'indirectly offset a reduction in the net tax revenue' of the state."  (Doc. 1 at ¶ 56).  One problematic interpretation, Arizona argues, is that Congress has unconstitutionally prevented States from lowering their net tax revenue in any way.  (*Id.* at ¶¶ 63–64).  Arizona also argues it was coerced into accepting ARPA funds simply because of the immense amount of the funds offered.  (*Id.* at ¶ 41).  Effectively, Arizona argues Congress named a price so high that Arizona had no choice but to risk relinquishing part of its sovereign power to tax in exchange.

The Secretary argues ARPA's Restriction is unambiguous and only applies when a State reduces its net tax revenue by offsetting that reduction with ARPA funds.  (Doc. 31 at 12).  The Restriction's purpose, according to the Secretary, is to ensure States use the funds for their intended purpose, not as a subsidy for tax cuts.  (*Id.* at 11–12).  In addition, the Secretary argues any perceived ambiguity is mitigated by the Interim Final Rule (the "Rule") because it explains how the Secretary will interpret and enforce the Restriction. (Doc. 31 at 12); *see also* Coronavirus State and Local Fiscal Recovery Funds, 86 Fed. Reg. 26,786 (May 17, 2021) (to be codified at 31 C.F.R. pt. 35).

Despite the Secretary's Rule, Arizona argues ambiguities remain.  (Doc. 59 at 12). Its Complaint brings two Counts against the Secretary.  Count One alleges that

Restriction's ambiguity violates Congress' spending clause powers. (Doc. 1 at ¶¶ 51–61). Count Two alleges that, under the problematic interpretation, the Restriction unconstitutionally violates Arizona's sovereignty under the spending clause, the Tenth Amendment, the anti-commandeering principle, and the very structure of the Constitution. (*Id.* at ¶¶ 62–70). For relief, Arizona seeks a declaration that the Restriction is ambiguous, that it is in excess of Congress' powers, and that it violates the Tenth Amendment. (*Id.* at 16). Finally, Arizona seeks to enjoin the Secretary from enforcing the Restriction on it. (*Id.*)

## II.     Discussion

As with all matters, the Court must first consider whether it has jurisdiction over this case. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006). Article III of the Constitution establishes that federal courts may only hear cases or controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). To satisfy this constitutional requirement, a plaintiff must have suffered a concrete and particularized injury that is both fairly traceable to the defendant's conduct and redressable by a favorable decision. *Id.* at 560–61. This "threshold requirement ensures that we act as judges, and do not engage in policymaking properly left to elected representatives." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018).

The Secretary challenges Arizona's standing to bring the aforementioned claims. In particular, she argues any injury Arizona asserts is too "hypothetical and speculative" for standing purposes. (Doc. 31 at 14). To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (*quoting Lujan,* 504 U.S. at 560). "When we have used the adjective 'concrete, we have meant to convey the usual meaning of the term— 'real,' and not 'abstract.'" *Id*. Moreover, "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Arizona argues it has suffered a concrete injury in five ways. (Doc. 32-1 at 6). First, Arizona says it was injured by the Restriction's ambiguity, which prevented it from understanding the conditions it accepted. (*Id.* at 7). Second, and relatedly, Arizona argues that the ambiguity casts a cloud of uncertainty over Arizona policymakers' ability to oversee the State's budgetary matters. (*Id.*) Third, it argues it has been injured by ARPA's "compliance costs." (Doc. 59 at 9). Fourth, it argues there is a realistic danger it will be injured by the Restriction's enforcement. (*Id.*) Finally, Arizona argues it was injured by ARPA's coercive power, which forced Arizona into accepting the Restriction, an unconstitutional condition. (Doc. 32-1 at 8).

### 1. Sovereign Injury

It is well-established that Congress may use its spending power "in the nature of a contract" with the States such that, "in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Because States cannot knowingly accept an offer without knowing its terms, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Id.* at 2; *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) ("States cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.'") (quoting *Pennhurst*, 451 U.S. at 17).

When Congress conditions the receipt of federal funds, Arizona asserts it has a right to both know of the condition's existence and to know, without ambiguity, what the condition requires. (Doc. 59 at 12). Here, Arizona argues Congress failed to unambiguously state what the Restriction requires of Arizona. Therefore, Arizona argues, the Restriction's ambiguity violates one the State's sovereign rights.

Arizona's argument lacks support in caselaw. To begin, *Pennhurst* and *Arlington Central* do not support Arizona's position that its rights are violated by the Restriction's ambiguity. In *Pennhurst*, the issue before the Court was not whether an ambiguous condition on the grant of funds injured the States; it was whether there *existed* a condition that "imposed an obligation on the States . . . ." 451 U.S. at 18. Similarly, in *Arlington*

*Central*, the issue was whether the Individuals with Disabilities Education Act "furnishes clear notice regarding" the *existence* of a condition whereby the States were required to pay for expert testimony fees incurred through bringing claims under the Act. 548 U.S. at 296. The Court was not tasked with determining what conditions would trigger such an obligation—the question was whether such an obligation existed at all. *See id.* Anything in those two cases beyond the issue of whether a condition existed, then, is dicta. Here, nobody questions the Restriction exists as a condition to Arizona accepting the funds. In that regard, Congress fulfilled its duty under *Penhurst* and *Arlington Central*.

Arizona also argues it has standing because the Supreme Court did not question the States' standing in *N.F.I.B. v. Sebelius*, 567 U.S. 519 (2012). (Doc. 59 at 8). But *Sebelius* is of no help to Arizona's argument, either. There, several States filed a complaint the day the Patient Protection and Affordable Care Act of 2010 was enacted. 567 U.S. at 540. They claimed Congress had overstepped its spending clause powers by requiring Americans to obtain minimum health care coverage. *Id.*

Importantly, States were not the only party to bring suit, as "several individuals, and the National Federation of Independent Business" also challenged whether Congress had exceeded its powers. *Id.* Although the issue of whether the States had standing was raised in the lower courts, the Eleventh Circuit held it was unnecessary to decide that question because at least one of the non-State plaintiffs had standing to bring each claim. *Fla. ex rel. Atty. Gen. v. U.S. Dep't of Health & Hum. Servs.*, 648 F.3d 1235, 1243 (11th Cir. 2011) ("The law is abundantly clear that so long as at least one plaintiff has standing to raise each claim—as is the case here—we need not address whether the remaining plaintiffs have standing."), *aff'd in part, rev'd in part sub nom. N.F.I.B.*, 567 U.S. at 519. Therefore, *Sebelius'* silence says nothing on Arizona's standing here.

Although Supreme Court precedent does not directly speak to the specific issue at hand, there is Ninth Circuit precedent holding that Congress is not required to make known every way in which States may violate a condition on the receipt of funds. Specifically, in *Mayweathers v. Newland*, the Ninth Circuit held a condition on funds may, in fact, be

"'largely indeterminate,' so long as the statute 'provid[es] clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with [the conditions].'" 314 F.3d 1062, 1067 (9th Cir. 2002) (quoting *Pennhurst*, 451 U.S. at 24–25). *Mayweathers* dealt with the Religious Land Use and Institutionalized Persons Act's ("RLUIPA") condition that "any institution receiving federal funds must not substantially burden the exercise of religion absent a showing that the burden is the least restrictive means of serving a compelling government interest." 314 F.3d at 1067. The court rejected the argument that Congress must "list every factual instance in which a state will fail to comply with a condition." *Id.* at 1067. Explaining every possible way in which a condition might be violated, it said, "would prove too onerous, and perhaps, impossible." *Id.*

Arizona argues the Restriction here is distinguishable because the *Mayweathers* condition "had decades of case law behind it and was well understood by practitioners." (Doc. 59 at 12). Although Arizona is correct in the sense that the strict scrutiny standard is well-known, the Ninth Circuit itself noted the standard is unruly, "perhaps unpredictable," and has "resulted in different determinations in different courts . . . ." *Mayweathers*, 314 F.3d at 1067. Despite the standard's (and therefore the condition's) unpredictable nature, the court found that Congress had satisfied its duty to the States by making the *existence* of a condition known. *Id.*

Here, Congress has done at least as much as it did in RLUIPA. It made the existence of the condition upon which Arizona could accept funds "explicitly obvious." *Id.* That Arizona was unsure of "every factual instance" of possible noncompliance does not amount to a violation of Congress' duty. *Id.* Therefore, under *Mayweathers*, the Court finds Arizona has not suffered a cognizable injury simply because it alleges that the Restriction is ambiguous.[2]

---

[2] In reaching this conclusion, the Court recognizes Arizona cited a recent decision from the Southern District of Ohio, which found Ohio had standing to challenge ARPA based solely on the Restriction's ambiguity. *See State v. Yellen*, 2021 WL 1903908 (S.D. Ohio May 12, 2021). However, that court candidly acknowledged it had "not identified any case law directly on point as to how standing should be assessed in the context of an unconstitutionally-ambiguous-Spending-Clause claim." *Id.* at *9. This Court, unlike the Southern District of Ohio, is benefitted and bound by *Mayweathers*, as it is directly on point.

### 2. Uncertainty

Arizona next argues the Restriction's ambiguity puts policymakers in an uncertain position because they will not know what Arizona needs to do to avoid returning ARPA funds to the Secretary. (Doc. 32-1 at 8). This argument makes sense in the abstract. But Arizona has offered no concrete facts showing the Restriction's impact on policymakers. Although Arizona has recently passed a budget providing for $1.9 billion in tax cuts, there is no evidence that the lawmakers' decision was at all influenced by the Restriction. (Doc. 59 at 7). Arizona has only offered conjectural and hypothetical injuries in this regard, and this is insufficient to establish a concrete injury. *Lujan*, 504 U.S. at 560. Furthermore, the Court reiterates *Mayweathers'* holding that there will never be a crystalline document capable of explaining every way a condition may be violated. 314 F.3d at 1067. There will always be some uncertainty.

### 3. Compliance Costs

Arizona also argues it has standing because ARPA imposes "compliance costs" on the State. (Doc. 59 at 9). In doing so, Arizona seems to argue it has been injured by hidden costs not clearly stated in ARPA. Specifically, it argues the Secretary's Interim Final Rule requires Arizona to identify any funds that have been used to offset tax changes, when "[n]othing" in ARPA requires Arizona to do so. (*Id.*) The Court disagrees. 42 U.S.C. § 802(d)(2)(B) requires States to produce "such other information as the Secretary may require for the administration of this section." The Court finds that it is within the Secretary's power, under ARPA, to request that Arizona identify funds used to offset tax changes, which is one of ARPA's conditions. These compliance costs are part and parcel of a clearly-stated ARPA condition, and they cannot now, after acceptance of the funds, be declared injurious for purposes of standing. *Pennhurst* 451 U.S. at 17 (noting that Congress pay place conditions on offers of funds). Therefore, the Court rejects this argument as a basis for standing.

### 4. Realistic Danger of Enforcement

Arizona next argues that because it recently passed a $1.9 billion tax cut, it faces the

realistic danger that it will have to return some of the ARPA funds to the Secretary. (Doc. 59 at 8). There are instances where a plaintiff may challenge a statute, provided he demonstrates a "realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). It is not necessary to wait for the injury to occur before obtaining relief, so long as the injury is "certainly impending." *Id.* The case law emphasizes that to have standing for prospective injuries of this kind requires an injury resulting from the "statute's actual or threatened *enforcement*, whether today or in the future." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021). "In the absence of contemporary enforcement, . . . a plaintiff claiming standing must show that the likelihood of future enforcement is 'substantial.'" *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014)).

Here, Arizona does not claim that the Secretary is currently enforcing the Restriction, and Arizona has not demonstrated a substantial likelihood of enforcement. Nowhere does Arizona claim to have directly or indirectly used ARPA funds to supplement a reduction in its net income. Arizona does not even claim the tax cut will result in a reduction in Arizona's net income. And although Arizona claims it certified that it would comply with the Restriction, "under its own reasonable reading of the language," it does not show how the tax cuts could violate the Restriction under any other reading. (Doc. 58 at 8). Because Arizona fails to show how the Restriction could apply to its recent tax cuts, it has not shown a realistic danger of sustaining a direct injury as a result of the Restriction's enforcement.

### 5. Coercion

Arizona's final argument is that it was injured by ARPA's coercive pressure. (Doc. 32-1 at 8). As Arizona says, "ARPA puts a financial gun to the States' fiscal heads." (*Id.*) This dramatic image alludes to *Sebelius*, where the Court found Congress had "put a gun to the head" of the States when they were required to either opt in to the Affordable Care Act's expansion in health care coverage or potentially lose all of their Medicaid funding, which accounted for nearly ten percent of the States' average budgets. 567 U.S. at 581.

Threatening to revoke ten percent, the Court found, "is economic dragooning that leaves the States with no real option but to acquiesce . . . ." *Id.* at 582.

Here, by contrast, ARPA will not revoke any federal funding Arizona enjoyed prior to accepting. The downside to declining the ARPA funds is just that—Arizona would not have received ARPA funds. Arizona alleges some States could not decline funds "given their financial situations, which have been significantly strained by the Covid-19 pandemic." (Doc. 1 at ¶ 41). This may be the case for some, but Arizona has not alleged facts showing that *it* has undergone financial strain. To the contrary, Arizona has alleged that its revenue from taxes in Fiscal Year 2021 brought in $1 billion over its estimates. (*Id.* at ¶ 37). Arizona also recently enacted a budget providing for $1.9 billion in tax cuts. (Doc. 59 at 7). Relatedly, the Court notes Arizona waited for over two months after ARPA was enacted and four days after the Secretary published the Rule before accepting the funds and certifying it would comply with ARPA's Restriction. (Doc. 47 at 3); *see also* 42 U.S.C. § 802(d)(1) (establishing the procedure for States to certify compliance with the Restriction). Such delay does not evidence coercive pressure.

In total, Arizona has not alleged facts showing it had no real option but to acquiesce to ARPA's offer. *See Sebelius*, 567 U.S. at 582. As a result, its claims of coercion are based in "more rhetoric than fact." *South Dakota v. Dole*, 483 U.S. 203, 211 (1987). Therefore, the Court finds Arizona has not demonstrated an injury in fact resulting from ARPA's alleged coercion.

### III. Conclusion

Ultimately Arizona fails to demonstrate it suffered a concrete injury sufficient to establish standing. Therefore, the Court must dismiss this action for lack of subject matter jurisdiction. *See Lujan*, 504 U.S. at 559.

…

…

…

…

Accordingly,

**IT IS HEREBY ORDERED** that Arizona lacks standing to pursue this action. The Motion for Preliminary Injunction (Doc. 11) is **denied**. The Clerk of Court shall kindly dismiss this action and enter judgment accordingly.

Dated this 22nd day of July, 2021.

*[signature]*

Honorable Diane J. Humetewa
United States District Judge