BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
MICHAEL P. CLENDENEN
STEPHEN EHRLICH
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
100 L Street, NW
Washington, DC 20005
Tel.: (202) 305-9803
Email: stephen.ehrlich@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

|  |  |
|---|---|
| State of Arizona,<br><br>                    Plaintiff,<br><br>          v.<br><br>Janet Yellen, in her official capacity as Secretary of the Treasury, *et al.*,<br><br>                    Defendants. | Case No. 2:21-cv-00514-ROS<br><br><br>**DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO ARIZONA'S INJUNCTION MOTION** |

## **TABLE OF CONTENTS**

Introduction ........................................................................... 1

Background ............................................................................ 1

Legal Standard ...................................................................... 4

Argument ............................................................................... 4

I.      Arizona cannot succeed on the merits.................................. 4

        A.      The offset provision is not unconstitutionally
                ambiguous. ..................................................... 4

        B.      ARPA is not coercive or commandeering. ................ 12

        C.      The offset provision relates to ARPA's
                purposes. ......................................................... 15

II.     Arizona has not satisfied the remaining three
        requirements for obtaining a permanent injunction. .......... 17

Conclusion ........................................................................... 17

## **TABLE OF AUTHORITES**

**Cases**

*Air Line Pilots Ass'n v. Alaska Airlines, Inc.,*
    898 F.2d 1393 (9th Cir. 1990) .......................................................... 17

*Ass'n of Priv. Sector Colleges & Univs. v. Duncan,*
    681 F.3d 427 (D.C. Cir. 2012) ......................................................... 10

*Ariz. Dream Act Coal. v. Brewer,*
    757 F.3d 1053 (9th Cir. 2014) ........................................................ 17

*Arizona v. Yellen,*
    34 F.4th 841 (9th Cir. 2022) ................................................... *passim*

*Arizona v. Yellen,*
    550 F. Supp. 3d 791 (D. Ariz. 2021) ......................................... *passim*

*Arlington Cent. Sch. Dist Bd. of Educ. v. Murphy,*
    548 U.S. 291 (2006) .............................................................. 5, 9, 11

*Bell v. New Jersey,*
    461 U.S. 773 (1983) ....................................................................... 15

*Bennett v. Ky. Dep't of Educ.,*
    470 U.S. 656 (1985) ................................................................ 7, 8, 11

*Benning v. Georgia,*
    391 F.3d 1299 (11th Cir. 2004) ................................................... 6, 16

*Biden v. Missouri,*
    142 S. Ct. 647 (2022) ...................................................................... 7

*Bucklew v. Precythe,*
    139 S. Ct. 1112 (2019) ..................................................................... 4

*Charles v. Verhagen,*
    348 F.3d 601 (7th Cir. 2003) ..................................................... 6, 8, 12

*Children's Hosp. Ass'n of Tex. v. Azar,*
   933 F.3d 764 (D.C. Cir. 2019) .................................................................. 11

*City of Los Angeles v. Barr,*
   929 F.3d 1163 (9th Cir. 2019) ............................................................ 11, 17

*City of Philadelphia v. Sessions,*
   280 F. Supp. 3d 579 (E.D. Pa. 2017) ...................................................... 17

*Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.,*
   527 U.S. 666 (1999) .................................................................................. 15

*Cutter v. Wilkinson,*
   423 F.3d 579 (6th Cir. 2005) ................................................................. 6, 9

*Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.,*
   526 U.S. 629 (1999) ................................................................................ 6, 8

*Ducey v. Yellen,*
   --- F. Supp. 3d ---, 2022 WL 2817710 (D. Ariz. July 19, 2022) ................ 6, 7, 8, 9

*eBay v. MercExchange, LLC,*
   547 U.S. 388 (2006) .................................................................................... 4

*Edmo v. Corizon, Inc.,*
   935 F.3d 757 (9th Cir. 2019) ..................................................................... 4

*Gruver v. La. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.,*
   959 F.3d 178 (5th Cir. 2020) ................................................................... 13

*Irving Indep. Sch. Dist. v. Tatro,*
   468 U.S. 883 (1984) .................................................................................. 11

*Jackson v. Birmingham Bd. of Educ.,*
   544 U.S. 167 (2005) ................................................................................ 6, 8

*LA All. for Hum. Rts. v. Cnty. of Los Angeles,*
   14 F.4th 947 (9th Cir. 2021) ............................................................. 12, 16

*Maryland v. King,*
　567 U.S. 1301 (2012) .................................................................. 17

*Mayweathers v. Newland,*
　314 F.3d 1062 (9th Cir. 2002) ............................................... *passim*

*Miss. Comm'n on Env't Quality v. EPA,*
　790 F.3d 138 (D.C. Cir. 2015) ................................................... 13

*Missouri v. Yellen,*
　39 F.4th 1063 (8th Cir. 2022) ................................................ *passim*

*Munn v. Illinois,*
　94 U.S. 113 (1876) .................................................................... 17

*New York v. United States,*
　505 U.S. 144 (1992) .............................................................. 15, 16

*NFIB v. Sebelius,*
　567 U.S. 519 (2012) ............................................................. *passim*

*Oklahoma v. U.S. Civ. Serv. Comm'n,*
　330 U.S. 127 (1947) ................................................................. 16

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
　810 F.3d 631 (9th Cir. 2015) ............................................... 12, 16

*Pennhurst State Sch. & Hosp. v. Halderman,*
　451 U.S. 1 (1981) ............................................................... 4, 5, 8

*Petit v. U.S. Dep't of Educ.,*
　675 F.3d 769 (D.C. Cir. 2012) ................................................. 11

*Religious Sisters of Mercy v. Azar,*
　513 F. Supp. 3d 1113 (D.N.D. Jan. 19, 2021) ............................ 13

*Rostker v. Goldberg,*
　453 U.S. 57 (1981) ..................................................................... 4

*Rust v. Sullivan,*
     500 U.S. 173 (1991) ................................................................................ 16, 17

*Sabri v. United States,*
     541 U.S. 600 (2004) ................................................................................ 10, 16

*School Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.,*
     584 F.3d 253 (6th Cir. 2009) .................................................................. 11, 15

*Smith v. Berryhill,*
     139 S. Ct. 1765 (2019) .................................................................................. 11

*South Dakota v. Dole,*
     483 U.S. 203 (1987) ............................................................................ 14, 15, 16

*Texas Education Agency v. U.S. Dep't of Education,*
     992 F.3d 350 (5th Cir. 2021) .......................................................................... 7

*United States v. Butler,*
     297 U.S. 1 (1936) .................................................................................... 14, 15

*United States v. Miami Univ.,*
     294 F.3d 797 (6th Cir. 2002) ........................................................................ 11

*United States v. Morrison,*
     529 U.S. 598 (2000) ................................................................................... 4, 12

*Va. Dep't of Educ. v. Riley,*
     106 F.3d 559 (4th Cir. 1997) .......................................................................... 8

*Van Wyhe v. Reisch,*
     581 F.3d 639 (8th Cir. 2009) .......................................................................... 8

*W. Va. Dep't of Health & Hum. Res. v. Sebelius,*
     649 F.3d 217 (4th Cir. 2011) .......................................................................... 8

**Statutes**

28 U.S.C. § 2201 ................................................................................ 4

42 U.S.C. § 802 ....................................................................... *passim*

42 U.S.C. § 1395x ............................................................................ 7

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................... 4

**Regulations**

86 Fed. Reg. 26,786 (May 17, 2021) ............................................. 3

87 Fed. Reg. 4338 (Jan. 27, 2022) ......................................... 3, 10

**Other Authorities**

Directly, Oxford English Dictionary Online,
    https://www.oed.com/view/Entry/53307 ................................. 10

Indirectly, Oxford English Dictionary Online,
    https://www.oed.com/view/Entry/94534 ................................. 10

**INTRODUCTION**

There is nothing new about Arizona's challenge to the American Rescue Plan Act, Congress's nearly $200 billion appropriation for state governments to respond to the COVID-19 pandemic and its economic effects. In fact, Judge Humetewa's prior decision resolved nearly every issue necessary to dispose of this case. When the Court previously dismissed the State's complaint, it correctly held that ARPA's offset provision—which prohibits States from using the federal funds to offset a net-tax-revenue reduction resulting from changes in state law—is not unconstitutionally ambiguous. "[N]obody questions the [offset provision] exists as a condition to [States] accepting the ARPA funds," and "[i]n that regard, Congress fulfilled its duty under" the Spending Clause. *Arizona v. Yellen*, 550 F. Supp. 3d 791, 796 (D. Ariz. 2021). The Court also correctly held that ARPA is not coercive because the statute "will not revoke any federal funding Arizona enjoyed prior to accepting." *Id.* at 799. "The downside to declining the ARPA funds is just that—Arizona would not have received ARPA funds." *Id.*

While Judge Humetewa reached these conclusions in the context of standing, the Ninth Circuit viewed them as *merits* determinations. *See Arizona v. Yellen*, 34 F.4th 841, 852–53 (9th Cir. 2022). So in evaluating the merits here, the Court need only reiterate those prior well-reasoned holdings and dismiss these claims. The same is true for Arizona's claim that the offset provision fails the Spending Clause "relatedness requirement." Pl.'s Mot. at 15–16, ECF No. 78. Although the relatedness requirement is minimal, it is far exceeded here because the offset provision merely specifies how States may use the newly appropriated federal funds to ensure that they are used for the public-health and economic-recovery purposes of the Act. So the Court should dismiss this claim too.

**BACKGROUND**

In the American Rescue Plan Act of 2021, Congress provided nearly $200 billion in new grants to help States mitigate the fiscal effects of the COVID-

19 pandemic.  42 U.S.C. § 802(a)(1); *see id.* § 802(b)(3)(A).  States may use ARPA funds for certain broad categories of costs, including to aid households, businesses, and industries affected by the pandemic; to give premium pay to workers performing essential work during the pandemic; to pay for state government services to the extent of pandemic-related revenue losses; and to make necessary investments in water, sewer, or broadband infrastructure.  *Id.* § 802(c)(1).  But ARPA also places two "[f]urther restriction[s]" on the use of the funds.  42 U.S.C. § 802(c)(2).  One is that a State may not deposit ARPA funds into a pension fund. *Id.* § 802(c)(2)(B).  The other, at issue here, is that a State "shall not use the funds provided under this section . . . to either directly or indirectly offset a reduction in the net tax revenue of such State" resulting from a change in state law during the covered period.[1]  *Id.* § 802(c)(2)(A); *see also Arizona*, 550 F. Supp. 3d at 794–95; Defs.' PI Opp'n at 1–4, ECF No. 31 (further background).  Despite receiving about $4.7 billion under ARPA, Arizona brought this suit alleging that the offset provision is unconstitutional.  Compl. ¶ 1, ECF No. 1.

Judge Humetewa previously dismissed this case for lack of standing, holding (among other things) that Arizona did not suffer a sovereign injury because Congress "made the existence of the condition upon which Arizona could accept funds 'explicitly obvious,'" and that the State did not suffer any coercive pressure because ARPA "will not revoke any federal funding Arizona enjoyed prior to accepting."  *Arizona*, 550 F. Supp. 3d at 797, 799 (quoting *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) and *NFIB v. Sebelius*, 567 U.S. 519, 582 (2012)).  Since the Court's decision, there have been two developments.

First, through the Treasury Secretary's authority "to issue such regulations as may be necessary or appropriate to carry out" ARPA, 42 U.S.C. § 802(f), Treasury issued a final rule implementing ARPA's statutory conditions, including the

_____

[1] The covered period began on March 3, 2021 and ends on the last day of the state fiscal year "in which all funds received by the State . . . have been expended or returned to, or recovered by" Treasury.  42 U.S.C. § 802(g)(1).

offset provision. *See Coronavirus State and Local Fiscal Recovery Funds*, 86 Fed. Reg. 26,786 (May 17, 2021); *Coronavirus State and Local Fiscal Recovery Funds*, 87 Fed. Reg. 4338 (Jan. 27, 2022). As with the interim final rule,[2] the final rule implements ARPA by "simply prohibit[ing] [S]tates from cutting taxes in a way that reduces net revenue more than a de minimis amount and then failing to account for that reduction through non-ARPA sources, such as through organic economic growth, increases in revenue from other sources, or spending cuts in sectors not related to ARPA." *Missouri v. Yellen*, 39 F.4th 1063, 1070 (8th Cir. 2022).

Second, the Ninth Circuit reversed Judge Humetewa's decision that Arizona lacked standing and remanded for this Court to hear the merits of Arizona's case. *See Arizona*, 34 F.4th at 853. But in doing so, the Ninth Circuit explained that it viewed Judge Humetewa's standing ruling as a premature ruling on the merits. *Id.* at 852 (noting that this Court's ambiguity "analysis examine[d] whether the condition is ambiguous, and not whether being offered ambiguous terms is a cognizable injury"); *id.* at 853 (explaining that this Court's coercion analysis "evaluate[d] the merits of whether ARPA is coercive instead of evaluating whether being coerced is a cognizable injury"). As the court put it, "differences in what the Offset Provision means and how it may be enforced go to the merits of Arizona's claims, and not to whether a court has jurisdiction to hear these claims." *Id.* But the Ninth Circuit made abundantly clear that its reversal "should not be construed as commenting in any way on the merits of Arizona's case." *Id.*

Arizona now again asks for an injunction, asserting largely the same claims Judge Humetewa previously rejected in her standing analysis. *Compare* Pl.'s PI Mot. at 7–17, ECF No. 11 *with* Pl.'s Mot. at 5–16.

---

[2] Arizona cites only the interim final rule, but never mentions that it was superseded by Treasury's final rule in January 2022. *See* Pl.'s Mot. at 3–4, 8–11.

## LEGAL STANDARD

Plaintiffs seek a permanent injunction.  Such relief is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A permanent injunction requires not only success on the merits, but also a demonstration that (1) the movant has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) an equity remedy is warranted after balancing the hardships; and (4) the public interest would not be disserved by a permanent injunction.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

## ARGUMENT

An injunction is an "extraordinary remedy never awarded as of right." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019).  And invalidating an Act of Congress is "the gravest and most delicate duty that" federal courts are "called upon to perform."  *Rostker v. Goldberg*, 453 U.S. 57, 64 (1981) (quotation marks omitted).  Here, Arizona cannot meet its heavy burden to show that the offset provision is "unconstitutional in all its applications."  *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019); *United States v. Morrison*, 529 U.S. 598, 607 (2000).

## I.   ARIZONA CANNOT SUCCEED ON THE MERITS.

### A.    The offset provision is not unconstitutionally ambiguous.

Arizona first contends that the offset provision is unconstitutionally ambiguous. Pl.'s Mot. at 6–11.  But the State's arguments misunderstand the constitutional inquiry.  To comply with the unambiguity requirement, Congress must simply make clear that acceptance of federal funds obligates States to comply with a condition.  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). That's exactly what ARPA does: "a state official who is engaged in the process of deciding whether the State should accept [ARPA] funds and the obligations that go with those funds" would "clearly understand that one of the obligations of

the Act is the obligation" not to use ARPA funds to offset a net-tax-revenue re-
duction resulting from changes in state law. *Arlington Cent. Sch. Dist Bd. of Educ.
v. Murphy*, 548 U.S. 291, 296 (2006). In other words, as Judge Humetewa recog-
nized, because "nobody questions the [offset provision] exists as a condition to
Arizona accepting the funds," Congress fulfilled its duty under the Spending
Clause. *Arizona*, 550 F. Supp. 3d at 796. Judge Humetewa was correct before and
this Court be correct if it applied that same holding to the merits.

As Judge Humetewa rightly recognized, precedent on Spending Clause un-
ambiguity establishes that Congress must only make clear the existence of a con-
dition. In *Pennhurst*—the origin of the Spending Clause unambiguity
requirement—the issue was "whether there *existed* a condition that imposed an
obligation on the States." *Id.* (quoting *Pennhurst*, 451 U.S. at 18). The *Pennhurst*
Court even explicitly recognized that a State's obligations may be "largely inde-
terminate," so long as Congress gives "clear notice to the States that they, by ac-
cepting funds under the Act, would indeed be obligated to comply with" the
condition. *Pennhurst*, 451 U.S. at 24–25. "Similarly, in *Arlington Central*, the issue
was whether the Individuals with Disabilities Education Act 'furnishes clear no-
tice regarding' the *existence* of a condition whereby the States were required to
pay for expert testimony fees incurred through bringing claims under the Act."
*Arizona*, 550 F. Supp. 3d at 796 (quoting *Arlington Central*, 548 U.S. at 296).

Numerous Spending Clause cases all confirm that States make an "in-
formed choice" when Congress simply makes clear that acceptance of federal
money obligates the States to comply with a condition. *Pennhurst*, 451 U.S. at 25.
The Supreme Court itself has repeatedly affirmed that "there [i]s sufficient notice
under *Pennhurst* where a statute ma[kes] clear that some conditions [a]re placed
on the receipt of federal funds." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167,
183 (2005); *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650
(1999). And the Circuits—especially the Ninth Circuit—have done the same,

holding that the Spending Clause is satisfied where a "statute's *intention to impose a condition* is expressed clearly," even though the operation of a funding condition "is perhaps unpredictable." *Mayweathers*, 314 F.3d at 1067; *Cutter v. Wilkinson*, 423 F.3d 579, 586 (6th Cir. 2005) ("Nothing more is required under *Pennhurst*, which held that Congress need provide no more than 'clear notice' to the states that funding is conditioned upon compliance with certain standards."); *Charles v. Verhagen*, 348 F.3d 601, 607–08 (7th Cir. 2003) ("[T]he exact nature of the conditions may be 'largely indeterminate,' provided that the existence of the conditions is clear . . . ."); *Benning v. Georgia*, 391 F.3d 1299, 1307 (11th Cir. 2004). Congress must only "make the existence of the condition itself—in exchange for the receipt of federal funds—explicitly obvious." *Mayweathers*, 314 F.3d at 1067.

The judges in this District have correctly applied this binding precedent to ARPA. First, Judge Humetewa did so in this case, following *Mayweathers* (and many other Spending Clause cases) to conclude that "the existence of the condition upon which Arizona could accept funds" need only be "explicitly obvious." *Arizona*, 550 F. Supp. 3d at 797 (quoting *Mayweathers*, 314 F.3d at 1067). Judge Logan did the same, holding that ARPA passes constitutional muster if it "unambiguously set[s] forth the condition." *Ducey v. Yellen*, --- F. Supp. 3d ---, 2022 WL 2817710, at *8 (D. Ariz. July 19, 2022) (Logan, J.) (citing *Mayweathers*, 314 F.3d at 1067). And in addressing an even broader ARPA provision, the court there found no Spending Clause violation where "ARPA clearly provides that states 'shall only use [ARPA] funds' for specific purposes," and "Congress delegated to the Secretary the authority to issue 'such regulations as may be necessary or appropriate to carry out this section'—which would certainly include greater specificity as to permissible uses." *Id.* (citing 42 U.S.C. §§ 802(c)(1), (f)).

"Here, nobody questions the [offset provision] exists as a condition to Arizona accepting the funds." *Arizona*, 550 F. Supp. 3d at 796. "In that regard," Judge Humetewa correctly held, "Congress fulfilled its duty under [the Supreme

Court's decisions in] *Pennhurst* and *Arlington Central*" and the Ninth Circuit's decision in *Mayweathers*. *Id.* at 796–97 (citing *Mayweathers*, 314 F.3d at 1067)).

Indeed, because "ARPA gives the Secretary authority to determine how the statute should apply to more specific facts rather than leaving it to the courts, as in *Mayweathers*," the statute is actually "better aligned with the judiciary's role and provides greater predictability for regulated parties in advance of litigation." *Ducey*, 2022 WL 2817710, at *8. This is not unusual. Agencies frequently exercise their authority under Spending Clause statutes to explain permissible uses of federal funds and even attach more conditions to the receipt of those funds. *See Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 669–72 (1985). The Supreme Court just recently cited and applied "such a broad and indefinite grant of authority" without questioning its constitutionality. *Ducey*, 2022 WL 2817710, at *8 (citing *Biden v. Missouri*, 142 S. Ct. 647, 652 (2022) (per curiam)); *see Biden*, 142 S. Ct. at 652 (noting that "Congress has authorized the Secretary [of Health and Human Services] to impose conditions on the receipt of Medicaid and Medicare funds that 'the Secretary finds necessary in the interest of the health and safety of individuals who are furnished services'" (quoting 42 U.S.C. § 1395x(e)(9))).

But when *Pennhurst* (and the legion of other cases) are properly applied, agency regulations have no bearing on the Spending Clause analysis.[3] If a statutory funding condition exists, the implementing agency could regulate the details of the condition subject to the Administrative Procedure Act and the other typical constraints; if not, any agency regulation imposing funding conditions would be unauthorized by the statute. That's the upshot of the *Riley* case cited by Arizona. Pl.'s Mot. at 9; *Va. Dep't of Educ. v. Riley*, 106 F.3d 559, 568 (4th Cir.

---

[3] For this reason, it is not necessary for the Court to consider *Texas Education Agency v. U.S. Dep't of Education*, 992 F.3d 350 (5th Cir. 2021). Because ARPA clearly establishes that a condition exists, the Spending Clause inquiry is satisfied and there is no need to look to the regulation. In any event, that case concerned a condition that a State waive its sovereign immunity to receive federal funds, which the Fifth Circuit held must clearly require a waiver. *Id.* at 361–62. But this case does not involve a condition that a State waive sovereign immunity.

1997) (en banc) (reasoning that an agency could not, by regulation, act *ultra vires* by imposing spending conditions that did not exist as part of the statute). And that's what *Pennhurst* requires: Congress must provide only "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" a condition. *Pennhurst*, 451 U.S. at 25. The idea is simply to keep Congress from "surprising participating States with post-acceptance or retroactive conditions." *NFIB*, 567 U.S. at 584.

"That Arizona was unsure of 'every factual instance' of possible noncompliance does not amount to a violation of Congress' duty." *Arizona*, 550 F. Supp. 3d at 797 (quoting *Mayweathers*, 314 F.3d at 1067); *Ducey*, 2022 WL 2817710, at *8 ("Even though the ARPA's language is broad and undoubtedly does not specify every use that would violate the condition, Congress is not required to provide such specificity."); *W. Va. Dep't of Health & Hum. Res. v. Sebelius*, 649 F.3d 217, 223 (4th Cir. 2011) ("Congress need not spell out every condition with flawless precision for a provision to be enforceable."); *Van Wyhe v. Reisch*, 581 F.3d 639, 650 (8th Cir. 2009) ("[S]etting forth every conceivable variation in the statute is neither feasible nor required."). The Supreme Court itself has said so. *See Bennett v. Ky. Dep't of Educ.*, 470 U.S. at 666 ("every improper expenditure" need not be "specifically identified and proscribed" in the statute); *Jackson*, 544 U.S. 167 at 183 (reiterating *Bennett*); *Davis*, 526 U.S. at 650 (same). That's because "it is simply impossible" for Congress to "delineate every instance in which a State may or may not comply with" the offset provision. *Charles*, 348 F.3d at 608; *Mayweathers*, 314 F.3d at 1067; *Arizona*, 550 F. Supp. 3d at 797.

Were it otherwise, numerous statutes would be arguably unconstitutional. That includes the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which was upheld by every circuit to address it, despite repeated acknowledgments that the operation of its funding condition is "unpredictable." *Mayweathers*, 314 F.3d at 1067; *see also Cutter*, 423 F.3d at 586. So Arizona is wrong

to demand codification of minute details in ARPA when, as Judge Humetewa rightly recognized, Congress in ARPA "has done at least as much as it did in RLUIPA." *Arizona*, 550 F. Supp. 3d at 797; *Ducey*, 2022 WL 2817710, at *8.

There is no reason for the Court to deviate from binding precedent and Judge Humetewa's prior conclusion to hold that the Spending Clause requires more. Although Arizona strenuously argues to the contrary, even the State is confused about what standard would apply. At one point Arizona concedes that a funding condition must only be "unambiguously clear as to [its] fundamental mandate." Pl.'s Mot. at 11 n.7. That standard is easily met here because the "fundamental mandate" of the offset provision is that state officials cannot use ARPA funds to offset a net-tax-revenue reduction. *See Arlington Central*, 548 U.S. at 296. But at other points, Arizona quibbles with the offset provision's minute details, like whether certain money must come from the same "fund" where "ARPA grant money is directly utilized." Pl.'s Mot. at 8. Beyond that, the State musters only conclusory statements that the offset provision supposedly "provides *no guidance* on critical interpretive questions." *Id.* (citation omitted).

But even if the Spending Clause required more than the existence of a condition, Congress did much more, explaining both the nature and scope of the condition. By its plain terms, the offset provision only applies when a State uses ARPA funds to "offset" a reduction in "net" tax revenue. 42 U.S.C. § 802(c)(2)(A); *see* Defs.' PI Opp'n at 8–9. Taken together, the statutory text simply says that States cannot "use ARPA funds as part of [their budget] balancing process." *Missouri*, 39 F.4th at 1070 n.6.

Arizona tries to inject ambiguity into the offset provision by pointing to the word "indirectly." *See* Pl.'s Mot. at 8. But Defendants have already explained both direct and indirect offsets. *See* Defs.' PI Opp'n at 9. For example, assuming no other changes, a State could not receive $2 billion in ARPA funds, cut its income tax by an amount equal to $2 billion, and use the ARPA funds to offset the

revenue loss.  That would be using ARPA funds to "directly" offset a net-tax-revenue reduction. 42 U.S.C. § 802(c)(2)(A); *see* Directly, Oxford English Dictionary Online, available here (last visited Nov. 4, 2022) (defining "directly" as "[i]n a direct manner or way").  Similarly, again assuming no other changes, a State could not use ARPA funds to replace $2 billion in planned state expenditures on COVID-19 testing and then use the $2 billion it had originally budgeted for that purpose to offset a $2 billion reduction in state income tax.  That would be using ARPA funds to "indirectly" offset a net-tax-revenue reduction. 42 U.S.C. § 802(c)(2)(A); *see* Indirectly, Oxford English Dictionary Online, available here (last visited Nov. 4, 2022) (defining "indirectly" as "through some intervening person or thing"); *see also* 87 Fed. Reg. at 4423-4429 (further details on how Treasury will determine "direct[] or indirect[]" offsets).

Put simply, the phrase "directly or indirectly" merely underscores that a State cannot circumvent the offset provision by using ARPA funds not to directly pay for a tax cut, but to pay for other expenditures while using state funds usually used for those other expenditures to cover the tax cut.  Congress routinely uses the phrase "directly or indirectly" in that fashion to emphasize that a statutory dictate cannot be circumvented by formalities.  *See, e.g.*, *Ass'n of Priv. Sector Colleges & Univs. v. Duncan*, 681 F.3d 427, 444 (D.C. Cir. 2012) ("Congress phrased the relevant provision broadly—employing words and phrases like 'any' and 'directly or indirectly.'").  And it is Congress's prerogative to codify the offset provision in such a way as to prevent not only direct offsets of tax cuts, but also to prevent accounting tricks that have the same effect.  After all, "[t]he power to keep a watchful eye on expenditures . . . is bound up with congressional authority to spend in the first place."  *Sabri v. United States*, 541 U.S. 600, 608 (2004).

If more were demanded of Congress, numerous other funding regimes (like Medicaid and education statutes) could also be called into question, even though courts have deferred to regulations implementing such statutes for decades.  *See,*

*e.g.*, *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 891–92 (1984) (Education of the Handicapped Act); *Children's Hosp. Ass'n of Tex. v. Azar*, 933 F.3d 764, 770 (D.C. Cir. 2019) (Medicaid); *Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 778 (D.C. Cir. 2012) (IDEA); *United States v. Miami Univ.*, 294 F.3d 797, 811-15 (6th Cir. 2002) (Family Educational Rights and Privacy Act).  In all those cases, the details of the statutory spending condition *must* have been ambiguous because otherwise there would be nothing for the agency to interpret or courts to defer to.  *See Smith v. Berryhill*, 139 S. Ct. 1765, 1778 (2019) ("*Chevron* deference 'is premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps.'").  But none of those cases then declared the spending conditions unconstitutional, as Arizona now demands.  *See, e.g.*, *City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019) (applying *Chevron* deference while simultaneously finding no Spending Clause violation).

Beyond ARPA, Defendants are aware of no case holding that a statutory funding condition is "unconstitutionally ambiguous" on its face.  That's unsurprising: even though the unambiguity requirement "has constitutional roots, it remains a rule of *statutory* interpretation" to be used in concrete disputes about whether a particular funding condition exists.  *See, e.g.*, *School Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 283 (6th Cir. 2009) (en banc) (Sutton, J., concurring).   In practice, the Supreme Court has applied *Pennhurst*'s unambiguity rule, along with other canons of interpretation, to interpret statutory conditions in particular circumstances.  *See Arlington Central*, 548 U.S. at 291.  And States are not without recourse if they dislike the offset provision or have ambiguity concerns: they may decline ARPA funds, seek a better bargain in the halls of Congress, or work cooperatively with Treasury.  *See Bennett*, 470 U.S. at 669 (describing a grant program as "an ongoing, cooperative program" in which "grant recipients ha[ve] an opportunity to seek clarification of the program re-

quirements"); *Charles*, 348 F.3d at 608 (explaining that States who dislike the ambiguity of an imposed condition "certainly could have refused federal funding"). But "[d]ue respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *Morrison*, 529 U.S. at 607. Arizona has not come close to making such a showing here.

### B. ARPA is not coercive or commandeering.

Arizona fares no better in arguing that the offset provision violates the Tenth Amendment and unconstitutionally coerces States into accepting ARPA funds with the attendant conditions. Compl. ¶¶ 62–70, 123–28; Pl.'s Mot. at 11–15; *see id.* at 11 (agreeing that the inquiry under both the Spending Clause and the Tenth Amendment is the same). Most glaringly, this claim is absent from Arizona's complaint, which only alleges coercion if the offset provision "prohibits the States from cutting taxes in essentially any manner." Compl. ¶¶ 65–66; *Arizona*, 550 F. Supp. 3d at 795 (noting that Arizona's claim arises only "under the problematic interpretation"). But "a tax cut, on its own, does not fall within the Offset Provision's ambit." *Arizona*, 34 F.4th at 856 (R. Nelson, J., concurring). "What [States] cannot do is use ARPA funds as part of [their budget] balancing process." *Missouri*, 39 F.4th at 1070 n.6. So this Court should reject Arizona's claim because the Court has no "authority to issue an injunction based on claims not pled in the complaint." *LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 957 (9th Cir. 2021) (citation omitted); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) (same).

In any event, the offset provision is, by any measure, a modest restriction on an otherwise generous outlay of federal funds. It simply ensures that Congress's substantial monetary outlay will be used as intended for the public-health

and economic-recovery purposes.  And if Arizona disliked the offset provision, it was free to simply decline the federal money.[4]

In arguing otherwise, Arizona misconstrues governing law.  For starters, Congress has full "authority to condition the receipt of funds on the States' complying with restrictions on the use of those funds, because that is the means by which Congress ensures that the funds are spent according to its view of the 'general Welfare.'"  *NFIB*, 567 U.S. at 580.  That is exactly what Congress has done here: titled "[f]urther restriction on the *use of funds*," the offset provision only applies to a State's "*use [of] the funds* provided under this section."  42 U.S.C. § 802(c)(2) (emphasis added).  So a coercion analysis is inapplicable because Congress here is not "pressuring the States to accept policy changes" independent of the new federal funds.  *NFIB*, 567 U.S. at 580; *Gruver v. La. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, 959 F.3d 178, 183–84 (5th Cir. 2020); *Miss. Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 179 (D.C. Cir. 2015); *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113 (D.N.D. Jan. 19, 2021), *appeal pending on other grounds*, No. 21-1890 (8th Cir. Apr. 21, 2021).  The State is free to do what it wants with its own money or tax scheme, including cutting taxes, providing rebates, increasing spending, or cutting expenditures.  *See Arizona*, 34 F.4th at 856 (R. Nelson, J., concurring) ("A tax cut, on its own, does not fall within the Offset Provision's ambit.").  Arizona must simply refrain from using the *federal* money to "directly or indirectly offset a reduction in net tax revenue."  42 U.S.C. § 802(c)(2)(A).  In other words, "[w]hat [States] cannot do is use ARPA funds as part of [their budget] balancing process."  *Missouri*, 39 F.4th at 1070 n.6.

Even if the coercion analysis applied here, Arizona would lose under *NFIB*.  The key aspect of the Medicaid expansion that *NFIB* found to be coercive was

---

[4] Arizona cites two district court cases that held the opposite.  *See* Pl.'s Mot. at 12–13.  But those cases are currently pending on appeal and were wrongly decided for the reasons explained below.

that Congress "penalize[d] States that choose *not to participate* in that new program by taking away their *existing* Medicaid funding."  *NFIB*, 567 U.S. at 585 (emphasis added).  Here, in stark contrast, there are no monetary consequences if a State chooses to decline ARPA funds.  As Judge Humetewa succinctly put it, the Act "will not revoke any federal funding Arizona enjoyed prior to accepting. The downside to declining the ARPA funds is just that—Arizona would not have received ARPA funds."  *Arizona*, 550 F. Supp. 3d at 799.

Contrary to Plaintiffs' contention, Pl.'s Mot. at 12–13, the amount of funding at issue in *NFIB* was only relevant to the *preexisting* funding that would be withdrawn if States *declined* the Medicaid expansion.  *Compare NFIB*, 567 U.S. at 582 (finding that a threatened loss of *preexisting* Medicaid funds—ten percent of States' overall budgets—was coercive) *with South Dakota v. Dole*, 483 U.S. 203, 211 (1987) (finding that a threatened five-percent loss of *preexisting* highway funds was not coercive).  After all, "[t]hreat of loss, not hope of gain, is the essence of economic coercion."  *United States v. Butler*, 297 U.S. 1, 81 (1936) (Stone, J., dissenting).  And *all* Justices in *NFIB* agreed that, despite the amount of funding at issue, "Congress could have made just the *new* funding provided under the ACA contingent on acceptance of the terms of the Medicaid Expansion."  *NFIB*, 567 U.S. at 687–88 (joint dissent); *id.* at 576, 585 (plurality) (same); *id.* at 624–46 (Ginsburg, J., concurring in part) (finding no coercion).  That holding defeats Arizona's claim that the sheer *amount* of offered funding—which Arizona says is "comparable" to the "amount of funds at stake in this case," Pl.'s Mot. at 13—is dispositive, regardless of whether it is being newly provided or eliminated.  Notably, ARPA is more modest than the prospective funding condition that all Justices in *NFIB* indicated was permissible: a State does not lose *all* of its ARPA funding, but only the amount it uses as an improper offset.  *See* 42 U.S.C. § 802(e)(1).

Perhaps recognizing these fatal flaws, Arizona attempts to put a Tenth Amendment spin on their coercion argument, arguing that ARPA intrudes on

States' sovereign authority to tax and "undermines political accountability." Pl.'s Mot. at 13–15.  But, again, the offset provision does not regulate States' ability to cut taxes; it simply precludes States from using *federal funds* to offset net-tax-revenue reductions.  *See Missouri*, 39 F.4th at 1070 n.6 ("What [States] cannot do is use ARPA funds as part of [their budget] balancing process."); *Arizona*, 34 F.4th at 856 (R. Nelson, J., concurring) ("A tax cut, on its own, does not fall within the Offset Provision's ambit.").  More fundamentally, though, Arizona continues to misunderstand both the Spending Clause and the Tenth Amendment, despite agreeing that the coercion and Tenth Amendment arguments are subject to the same analysis.  *Compare* Pl.'s Mot. at 11 *with id.* at 13–15.  It has long been established that "Congress can use [its Spending Clause] power to implement federal policy it could not impose directly under its enumerated powers."  *NFIB*, 567 U.S. at 578; *Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686 (1999) (same); *Dole*, 483 U.S. at 207 (same); *Butler*, 297 U.S. at 66 (same).  And "[r]equiring States to honor the obligations voluntarily assumed as a condition of federal funding before recognizing their ownership of funds simply does not intrude on their sovereignty." *Bell v. New Jersey*, 461 U.S. 773, 790 (1983); *City of Pontiac*, 584 F.3d at 283 (Sutton, J., concurring) ("[T]he Tenth Amendment, the Eleventh Amendment and the Constitution's other structural limitations on congressional authority do not limit properly enacted spending-clause legislation.").

Because Arizona had "a legitimate choice whether to accept the federal conditions in exchange for federal funds," *NFIB*, 567 U.S. at 578, its coercion and Tenth Amendment arguments should be rejected.  The State was free to take or decline the federal money and state officials "can fairly be held politically accountable for choosing to accept or refuse the federal offer."  *Id.*; *New York v. United States*, 505 U.S. 144, 168 (1992).

## C.   The offset provision relates to ARPA's purposes.

Arizona also incorrectly argues that the offset provision is not sufficiently

related to ARPA's purposes.  Pl.'s Mot. at 15–16.  Again, this claim is absent from Arizona's complaint, which only alleges a lack of relatedness if the offset provision "prohibits the States from cutting taxes in essentially any manner."  Compl. ¶¶ 65–66; *Arizona*, 550 F. Supp. 3d at 795 (noting that Arizona's claim arises only "under the problematic interpretation").  But, again, "a tax cut, on its own, does not fall within the Offset Provision's ambit."  *Arizona*, 34 F.4th at 856 (R. Nelson, J., concurring).  "What [States] cannot do is use ARPA funds as part of [their budget] balancing process."  *Missouri*, 39 F.4th at 1070 n.6.  So this Court should reject Arizona's relatedness claim because the Court has no "authority to issue an injunction based on claims not pled in the complaint." *LA All. for Hum. Rts.*, 14 F.4th at 957 (citation omitted); *Pac. Radiation*, 810 F.3d at 633 (same).

Regardless, the paragon of a condition that is related to the purposes of federal spending is one that ensures "that public funds [are] spent for the purposes for which they were authorized."  *Rust v. Sullivan*, 500 U.S. 173, 196 (1991).  And that's exactly what the offset provision does: it merely specifies how States may use the newly appropriated federal funds to ensure that they are used for the public-health and economic-recovery purposes of the Act.  *See Sabri*, 541 U.S. at 608; *Oklahoma v. U.S. Civ. Serv. Comm'n*, 330 U.S. 127, 143 (1947); Section II.B., *supra*.  Congress did not provide ARPA funds to replace purposeful decreases in net tax revenue; it provided the money to help States economically recover from the pandemic in ways they otherwise could not.

This is far more than sufficient to meet the "minimal standard of rationality" required of Spending Clause legislation.  *Benning*, 391 F.3d at 1308; *Mayweathers*, 314 F.3d at 1067 (conditions need only "bear some relationship to the purpose of the federal spending"); *see New York*, 505 U.S. at 172 (finding sufficient relation where "both the conditions and the payments embody Congress' efforts to address the pressing problem of radioactive waste disposal"); *Dole*, 483 U.S. at

208–09 (finding that the federal interest in a uniform drinking age was suffi-ciently related to States' receipt of highway funds).  In fact, Arizona points to no appellate case, and Defendants are aware of none, in which a court has struck down a funding condition on relatedness grounds.[5]  *See City of Los Angeles*, 929 F.3d at 1175 (recognizing that the relatedness standard "is not demanding" and that "the Court has never struck down a condition on federal grants based on this relatedness prong").  Arizona's relatedness argument should be rejected.

## II.   ARIZONA HAS NOT SATISFIED THE REMAINING THREE REQUIREMENTS FOR OBTAINING A PERMANENT INJUNCTION.

As Defendants have explained, Arizona also cannot meet the other injunc-tion factors.  Defs.' PI Opp'n at 16–17.  Arizona will suffer no irreparable harm if its motion is denied because the State will have "an adequate remedy" if recoup-ment proceedings ever materialize.  *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014); 42 U.S.C. § 802(e).  In contrast, an injunction would irrepa-rably harm the United States because "[a]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suf-fers a form of irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).  And "[i]f there is doubt, the expressed will of the legislature should be sustained."  *Munn v. Illinois*, 94 U.S. 113 (1876).

## CONCLUSION

The Court should dismiss this case or enter judgment for Defendants.  *See Air Line Pilots Ass'n v. Alaska Airlines, Inc.*, 898 F.2d 1393, 1397 n.4 (9th Cir. 1990).

---

[5] The State cites only one district court case in passing.  *See* Pl.'s Mot. at 16 (citing *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 640-43 (E.D. Pa. 2017)).  But that case found a lack of relatedness only because it applied Third Circuit precedent and drew a distinction between Congress's interest in the funding stat-ute and an agency's interest in administering the program.  *See City of Philadelphia*, 280 F. Supp. 3d at 643.  The *City of Philadelphia* court's reasoning is inapplicable here, both because this Court is not bound by Third Circuit law and because, through ARPA, Congress has expressed its paramount interest that funds are "spent for the purposes for which they were authorized."  *Rust*, 500 U.S. at 196.

DATED: November 4, 2022                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General

                                           ALEXANDER K. HAAS
                                           Director, Federal Programs Branch

                                           BRIGHAM J. BOWEN
                                           Assistant Director, Federal Programs Branch

                                           /s/ Stephen Ehrlich
                                           MICHAEL P. CLENDENEN
                                           STEPHEN EHRLICH
                                           Trial Attorneys
                                           Civil Division, Federal Programs Branch
                                           U.S. Department of Justice
                                           1100 L Street, NW
                                           Washington, DC 20005
                                           Phone: (202) 305-9803
                                           Email:  stephen.ehrlich@usdoj.gov

                                           Counsel for Defendants