BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
MICHAEL P. CLENDENEN
STEPHEN EHRLICH
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
100 L Street, NW
Washington, DC 20005
Tel.: (202) 305-9803
Email: stephen.ehrlich@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, <br><br> Plaintiff, <br><br> v. <br><br> Janet Yellen, in her official capacity as Secretary of the Treasury, *et al.*, <br><br> Defendants. | Case No. 2:21-cv-00514-ROS <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.       The offset provision is not unconstitutionally ambiguous. .......... 2

II.     ARPA is not coercive or commandeering. ..................................... 8

III.    The offset provision relates to ARPA's purposes. ....................... 10

CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITES

**Cases**

*Air Line Pilots Ass'n v. Alaska Airlines, Inc.*,
   898 F.2d 1393 (9th Cir. 1990) .................................................................................. 11

*Arizona v. Yellen*,
   34 F.4th 841 (9th Cir. 2022) .................................................................................. 4, 8

*Arizona v. Yellen*,
   550 F. Supp. 3d 791 (D. Ariz. 2021) ................................................................*passim*

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
   548 U.S. 291 (2006) ................................................................................................... 3

*Ass'n of Priv. Sector Colls. & Univs. v. Duncan*,
   681 F.3d 427 (D.C. Cir. 2012) ................................................................................... 5

*Benning v. Georgia*,
   391 F.3d 1299 (11th Cir. 2004) ............................................................................... 10

*Biden v. Missouri*,
   142 S. Ct. 647 (2022) ................................................................................................. 4

*Charles v. Verhagen*,
   348 F.3d 601 (7th Cir. 2003) .................................................................................. 3, 6

*City of Los Angeles v. Barr*,
   929 F.3d 1163 (9th Cir. 2019) ..............................................................................7, 10

*Ducey v. Yellen*,
   --- F. Supp. 3d ---, 2022 WL 2817710 (D. Ariz. July 19, 2022) ....................1, 4, 6, 7

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ................................................................................................... 5

*Kentucky v. Yellen*,
   563 F. Supp. 3d 647 (E.D. Ky. 2021) ........................................................................ 9

*Massachusetts v. Mellon*,
  262 U.S. 447 (1923) ................................................................................................... 7

*Mayweathers v. Newland*,
  314 F.3d 1062 (9th Cir. 2002) ....................................................................... 3, 4, 10, 11

*Missouri v. Yellen*,
  39 F.4th 1063 (8th Cir. 2022) .................................................................................. 4, 8

*NFIB v. Sebelius*,
  567 U.S. 519 (2012) ................................................................................................ 2, 9

*New York v. United States*,
  505 U.S. 144 (1992) ............................................................................................ 10, 11

*Ohio v. Yellen*,
  53 F.4th 983 (6th Cir. 2022) .................................................................................... 5, 9

*Oklahoma v. U.S. Civ. Serv. Comm'n*,
  330 U.S. 127 (1947) .................................................................................................. 10

*Rust v. Sullivan*,
  500 U.S. 173 (1991) .................................................................................................. 10

*Sabri v. United States*,
  541 U.S. 600 (2004) .................................................................................................. 10

*School Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*,
  584 F.3d 253 (6th Cir. 2009) ...................................................................................... 8

*South Dakota v. Dole*,
  483 U.S. 203 (1987) .................................................................................................. 10

*Texas v. Yellen*,
  --- F. Supp. 3d. ---, 2022 WL 1063088 (N.D. Tex Apr. 8, 2022) ............................. 10

*West Virginia v. U.S Dep't of Treasury*,
  571 F. Supp. 3d 1229 (N.D. Ala. 2021) ...................................................................... 7

**Statutes**

42 U.S.C. § 802 ............................................................................................................. *passim*

**Regulations**

17 C.F.R. § 240.10b-5 ................................................................................................................ 5

# INTRODUCTION

In attempting to invalidate the offset provision of the American Rescue Plan Act (ARPA)—a duly enacted statute providing billions in emergency aid—Arizona essentially musters no more than a two-wrongs-make-a-right argument. Other courts have found ARPA unconstitutionally ambiguous because it does not specify the minute details of the offset provision, Arizona exclaims, so this Court should too. Never mind that Judge Humetewa *in this case* rejected the exact arguments that the State raises here. *Arizona v. Yellen*, 550 F. Supp. 3d 791, 797 (D. Ariz. 2021) (Congress allowably "made the existence of the condition upon which Arizona could accept funds explicitly obvious."). Never mind that Judge Logan correctly did the same in upholding an even broader ARPA provision. *Ducey v. Yellen*, --- F. Supp. 3d ---, 2022 WL 2817710, at *8 (D. Ariz. July 19, 2022) ("Even though the ARPA's language is broad and undoubtedly does not specify every use that would violate the condition, Congress is not required to provide such specificity."). Never mind that those judges properly applied binding Supreme Court and Ninth Circuit precedent to do so. And never mind that all those Supreme Court, Ninth Circuit, and District of Arizona decisions were crystal clear in rejecting Arizona's desired outcome: uncertainty about "every factual instance of possible noncompliance does not amount to a violation of Congress' duty." *Arizona*, 550 F. Supp. 3d at 797; *Ducey*, 2022 WL 2817710, at *8. This Court should likewise reject the State's arguments and reiterate Judge Humetewa's correct reasoning: "nobody questions the [offset provision] exists as a condition to Arizona accepting the funds" and "[i]n that regard, Congress fulfilled its duty[.]" *Arizona*, 550 F. Supp. 3d at 796.

The same is true for Arizona's other claims. In arguing that the amount of ARPA funding was so large as to be coercive, the State refuses to engage with the Supreme Court's decision in *NFIB*, where all Justices agreed that *new* federal funding, however substantial, may properly be subject to conditions. *NFIB v.*

*Sebelius*, 567 U.S. 519, 687–88 (2012) (joint dissent); *id.* at 576, 585 (plurality) (same); *id.* at 624–46 (Ginsburg, J., concurring in part) (finding no coercion). That's exactly what ARPA does: States who misuse ARPA funds—for example, by using them as an improper offset—stand to lose only the amount of ARPA funds they misused. 42 U.S.C. § 802(e). In contrast, the key in *NFIB* was that States who *declined* the condition at issue stood to lose *preexisting* federal funding. *NFIB*, 567 U.S. at 585. That is not true here. As Judge Humetewa rightly explained, ARPA is not coercive because it "will not revoke any federal funding Arizona enjoyed prior to accepting," so the "downside to declining the ARPA funds is just that—Arizona would not have received ARPA funds." *Arizona*, 550 F. Supp. 3d at 799. And because the offset provision is a condition on how states use funds, it is necessarily related to the purpose of the funding. The Court should dismiss Arizona's claims or enter judgment in favor of Defendants.

## ARGUMENT

### I. THE OFFSET PROVISION IS NOT UNCONSTITUTIONALLY AMBIGUOUS.

Arizona fails to articulate any standard by which this Court should adjudicate a Spending Clause ambiguity challenge. *See* Combined Reply in Supp. of Renewed Mot. for Prelim. Inj. & Permanent Inj. & Resp. in Opp'n to Mot. to Dismiss (Pl.'s Opp'n) at 4–10, ECF No. 87. Does the statutory condition need to be "unambiguously clear" only "as to [its] fundamental mandate"? Renewed Mot. for Prelim. Inj. & Permanent Inj (Pl.'s Mot.) at 11 n.7, ECF No. 78. Or does the statutory condition need to set forth every minute detail? *See* Pl.'s Opp'n at 6–7 (wanting details about, among other things, the "baseline against which to measure revenue reductions" and whether the offset provision "prohibits a reduction in *expected* tax revenues" or "*actual* tax revenues"). Or something else? Arizona doesn't specify. It simply wants whatever analysis allows it to spend almost $5 billion in federal money without abiding by the minimal federal restrictions. *See* 42 U.S.C. § 802(c)(2). But as Defendants have explained, the real standard is

clear, easy to apply, and mandated by precedent: Congress need only "make the existence of the condition itself—in exchange for the receipt of federal funds—explicitly obvious." *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002). Agencies, like Treasury here, may then fill in the details subject to the Administrative Procedure Act and the other typical constraints.

In arguing otherwise, Arizona has no answer to Defendants' legion of cited cases, all of which express the same idea: "the exact nature of the conditions may be 'largely indeterminate,' provided that the existence of the conditions is clear." *Charles v. Verhagen*, 348 F.3d 601, 607–08 (7th Cir. 2003) (quoting *Mayweathers*, 314 F.3d at 1067); Defs.' Mot. to Dismiss & Opp'n to Pl.'s Inj. Mot., (Defs.' Mot.) at 5–8, ECF No. 86 (collecting cases).  Instead, Arizona argues that the Supreme Court's decision in *Arlington Central* demands more clarity.  Pl.'s Opp'n at 5–6. But as Judge Humetewa explained, the issue in *Arlington Central* "was whether the Individuals with Disabilities Education Act 'furnishes clear notice regarding' the *existence* of a condition whereby the States were required to pay for expert testimony fees incurred through bringing claims under the Act." *Arizona*, 550 F. Supp. 3d at 796 (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006)).  Nothing in *Arlington Central* was inconsistent with the binding precedent of *Mayweathers*, which says that Congress need only "make the existence of the condition itself . . . explicitly obvious." *Mayweathers*, 314 F.3d at 1067.

And Arizona conspicuously avoids any mention of post-*Arlington Central* cases, which would make no sense if the Spending Clause required the particularized clarity Arizona demands.  Pl.'s Opp'n at 5–6.  For example, Arizona says nothing about *Biden v. Missouri*, where the Supreme Court recently cited and applied "a broad and indefinite grant of authority" for an agency "to impose [ ] conditions" without questioning the provision's constitutionality.  Defs.' Mot. at 7 (citing *Ducey*, 2022 WL 2817710, at *8 and *Biden v. Missouri*, 142 S. Ct. 647, 652

1  (2022) (per curiam)). If Arizona were correct, that provision would be unconsti-
2  tutional. The same would be true of a similar ARPA provision, which Judge Lo-
3  gan recently upheld using the same standard articulated by the Ninth Circuit in
4  *Mayweathers* and Judge Humetewa in this case.[1] Defs.' Mot. at 6.

5  "Here, nobody questions the [offset provision] exists as a condition to Ari-
6  zona accepting the funds." *Arizona*, 550 F. Supp. 3d at 796. "In that regard,"
7  Judge Humetewa correctly held, "Congress fulfilled its duty under *Pennhurst*
8  and *Arlington Central*" and *Mayweathers*.[2] *Id.* at 796–97 (citing *Mayweathers*, 314
9  F.3d at 1067). That should end the analysis.

10  But ARPA does plenty more than just note the existence of a condition, it
11  explains both the nature and scope of the offset provision as well. Defs.' Mot. at
12  9–10. Fighting this simple conclusion, Arizona attempts to manufacture ambi-
13  guity by arguing that the statute's use of the phrase "directly or indirectly" ren-
14  ders the offset provision incomprehensible because "money is fungible," so any
15  tax cut is "indirectly" offset by ARPA funds. *See* Pl.'s Opp'n at 5–6. But the
16  fungibility of money is not some talisman that renders the offset provision unin-
17  telligible. The key is Congress's use of the word "offset," which merely prohibits
18  States from "us[ing] ARPA funds as part of [their budget] balancing process[.]"
19  *Missouri v. Yellen*, 39 F.4th 1063, 1070 n.6 (8th Cir. 2022). As Defendants ex-
20  plained, Congress's use of the phrase "directly or indirectly" was simply meant

---

[1] After appealing that decision, the Governor later moved to dismiss the appeal. *See Ducey v. Yellen*, 22-16101, ECF No. 26 (9th Cir. Dec. 23, 2022).

[2] Arizona bizarrely suggests that the Ninth Circuit's reversal of Judge Humetewa's standing ruling casts doubt on her underlying reasoning. *See* Pl.'s Opp'n at 3. But the Ninth Circuit made abundantly clear that its reversal "should not be construed as commenting in any way on the merits of Arizona's case." *Arizona v. Yellen*, 34 F.4th 841 (9th Cir. 2022). And it only reversed because it viewed Judge Humetewa's standing ruling as a premature ruling on the merits. *Id.* at 852–53; Defs.' Mot. at 3. Nowhere did the Ninth Circuit say that the district court got the merits wrong. So this Court is free to—and should—reiterate Judge Humetewa's prior reasoning that the offset provision is not unconstitutionally ambiguous.

to prevent States from using accounting tricks to circumvent the statutory restriction against using ARPA funds to "offset" tax-cut-related revenue losses. Defs.' Mot. at 9–10. This could happen when, for example, a State uses ARPA funds to replace $2 billion in planned state expenditures on COVID-19 testing and then uses the $2 billion it had originally budgeted for that purpose to offset a $2 billion reduction in state income tax. *Id.*

Contrary to Arizona's odd contention that the "'directly or indirectly offset' language is completely unprecedented," Pl.'s Opp'n at 10, such text is nothing new. As Defendants explained, "directly or indirectly" is commonly used to emphasize that a dictate cannot be circumvented by formalities. Defs.' Mot. at 10 (citing *Ass'n of Priv. Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 444 (D.C. Cir. 2012)); *see also Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011) (quoting 17 C.F.R. § 240.10b-5(b)) (Under the SEC's Rule 10b-5, "it is unlawful for 'any person, directly or indirectly, . . . [t]o make any untrue statement of a material fact' in connection with the purchase or sale of securities.").

Arizona's remaining arguments amount to improper nitpicking of the offset provision. *Compare* Pl.'s Opp'n at 6–7 *with* Defs.' Mot. at 8 (collecting cases for the proposition that Congress need not detail "'every factual instance' of possible noncompliance"). To do this, Arizona largely relies on out-of-circuit ARPA cases that are overturned, currently on appeal, or currently pending potential further review.[3] *See* Pl.'s Opp'n at 6–7. Those decisions were incorrect for the reasons Defendants explain here. And as Judge Humetewa recognized, this

---

[3] *Ohio* was overturned by the Sixth Circuit as moot. *Ohio v. Yellen*, 53 F.4th 983, 994 (6th Cir. 2022). *West Virginia* is currently pending on appeal in the Eleventh Circuit. And Defendants disagree with the Sixth Circuit's ruling on the merits in *Kentucky* and are currently considering their options for further review.

Court "is benefitted and bound by [the Ninth Circuit's decision in] *Mayweathers*," which is "directly on point." *Arizona*, 550 F. Supp. 3d at 797 n.2. [4]

Those decisions were also incorrect on their own terms. Issues like the "baseline against which to measure revenue reductions" and "actual" versus "expected" reductions in tax revenue, Pl.'s Opp'n at 6–7, are textbook examples of details that can be filled in by the agency rather than painstakingly specified by Congress. *See Charles*, 348 F.3d at 608 ("[I]t is simply impossible" for Congress "to have envisioned all aspects of compliance and noncompliance" with a funding condition.). Indeed, Congress explicitly gave Treasury "the authority to issue such regulations as may be necessary or appropriate to carry out this section" of ARPA. 42 U.S.C. § 802(f). That is not uncommon. Agencies routinely flesh out the details of Spending Clause statutes and courts routinely defer to those details. *See* Defs.' Mot. at 10–11 (collecting cases).

Plaintiffs protest that such deference is inapplicable here because Defendants said that "agency regulations have no bearing on the Spending Clause analysis." Pl.'s Opp'n at 9. But this completely misses the point. Defendants are not asking for deference to Treasury's regulations because Arizona has not challenged them. The point is that, in all those *Chevron* deference cases, the details

---

[4] Arizona tries in vain to distinguish *Mayweathers*, saying only that the offset provision is "impossible to understand" and not just "unpredictable." Pl.'s Opp'n at 8–9. But the State fails to explain how the offset provision is "impossible to understand" or why that distinction matters under the Ninth Circuit's mandated standard for Spending Clause ambiguity. Regardless, as discussed, the offset provision is straightforward. And, as Judge Logan correctly explained, because "ARPA gives the Secretary authority to determine how the statute should apply to more specific facts rather than leaving it to the courts, as in *Mayweathers*," the statute is actually "better aligned with the judiciary's role and provides greater predictability for regulated parties in advance of litigation." *Ducey*, 2022 WL 2817710, at *8.

of the statutory spending condition *must* have been ambiguous because otherwise there would be nothing for the agency to interpret or courts to defer to.[5] Defs.' Mot. at 11. But none of those cases declared the spending conditions unconstitutional, as Arizona demands, simply because there was some ambiguity.

Nowhere is this clearer than in *City of Los Angeles*, where the Ninth Circuit applied *Chevron* deference while simultaneously finding no Spending Clause violation. *City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019). Perhaps recognizing that its position is irreconcilable with *City of Los Angeles*, Arizona attempts to escape that decision by asserting that "Congress has not made any delegation here." Pl.'s Opp'n at 10. But Congress explicitly authorizing Treasury "to issue such regulations as may be necessary or appropriate to carry out this section" of ARPA. 42 U.S.C. § 802(f). And Treasury's final rule (and interim final rule) are valid exercises of that authority. *See generally Ducey*, 2022 WL 2817710. Like many other Spending Clause regimes, ARPA clearly states that a condition exists and the details of the condition may be provided by regulation.

This proves Defendants' point. Far from "immuniz[ing]" the offset provision "from constitutional scrutiny simply because Congress has never done something so audacious and dubious before," Pl.'s Opp'n at 10, Congress has conditionally offered money to States for more than a century. *See, e.g.*, *Massachusetts v. Mellon*, 262 U.S. 447, 479 (1923). Yet until Arizona's cited out-of-circuit ARPA cases, no court had ever held that a statutory funding condition was un-

---

[5] In several places, Arizona quotes Defendants' statement that "agency regulations have no bearing on the Spending Clause analysis." Pl.'s Opp'n at 15. But the State leaves out the first part of that statement: "*when* Pennhurst *(and the legion of other cases) are properly applied*." Defs.' Mot. at 7 (emphasis added). In other words, the regulations are irrelevant to the Spending Clause inquiry because that inquiry asks about the existence of a condition. If the Court nevertheless concludes, contrary to binding precedent, that the Spending Clause requires something more, like minute details about the condition, then the regulations may be relevant to the Court's analysis, especially if the Court accepts Arizona's suggestion that the analysis can look beyond the statute itself. Pl.'s Opp'n at 9 (quoting *West Virginia v. U.S Dep't of Treasury*, 571 F. Supp. 3d 1229, 1253 (N.D. Ala. 2021)).

constitutionally ambiguous.  That is not an accident.  Even though the unambiguity requirement "has constitutional roots, it remains a rule of *statutory* interpretation" to be used in concrete disputes about whether a particular funding condition exists.  Defs.' Mot. at 11 (quoting *School Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 283 (6th Cir. 2009) (en banc) (Sutton, J., concurring)).  Here, the Spending Clause ambiguity inquiry—as used in *Pennhurst*, *Arlington Central*, *Mayweathers*, and Defendants' other cited cases—is easily satisfied because the offset provision "exists as a condition to Arizona accepting the funds." *Arizona*, 550 F. Supp. 3d at 796.  If Arizona had any concerns, it should have declined the ARPA funds, sought a better bargain in the halls of Congress, or worked cooperatively with Treasury.  Defs.' Mot. at 11–12.  It sued instead.  This Court, like Judge Humetewa, should reject Arizona's arguments.

## II. ARPA IS NOT COERCIVE OR COMMANDEERING.

Arizona again fails to engage with binding precedent, much less its own complaint, in continuing to argue that the offset provision is coercive or commandeering.  Pl.'s Opp'n at 11–13.  For starters, Arizona's complaint alleges a coercion claim only insofar as the offset provision is interpreted as "prohibit[ing] the States from cutting taxes in essentially any manner."  *See* Defs.' Mot. at 12 (quoting Compl. ¶¶ 65-66); *Arizona*, 550 F. Supp. 3d at 795 (noting that Arizona's claim arises only "under the problematic interpretation").  But that interpretation—which relies on the money-is-fungible theory—has always been a chimerical reading of the statute.  As a textual matter, "a tax cut, on its own, does not fall within the Offset Provision's ambit"; "[w]hat [States] cannot do is use ARPA funds as part of [their budget] balancing process."  *Arizona*, 34 F.4th at 856 (R. Nelson, J., concurring); *Missouri*, 39 F.4th at 1070 n.6.  Arizona's argument is also moot because, whether or not it was ever a reasonable interpretation, Treasury has affirmatively and repeatedly disavowed the no-tax-cuts interpretation

through its regulations. *See Ohio*, 53 F.4th at 991-92 ("Treasury repeatedly disavowed Ohio's money-is-fungible reading of the statute.").

In any event, Defendants previously explained that a coercion analysis does not apply to conditions, like the offset provision, that simply specify how the federal funds may be used, because "that is the means by which Congress ensures that the funds are spent according to its view of the 'general Welfare.'" *NFIB*, 567 U.S. at 580; Defs.' Mot. at 13. Arizona doesn't even attempt to respond to that argument or Defendants' cited cases.

Nor does the State attempt to engage Defendants' arguments about the Supreme Court's precedent in *NFIB*, which held that the Medicaid expansion was coercive because Congress "penalize[d] States that choose *not to participate* in that new program by taking away their *existing* Medicaid funding." *NFIB*, 567 U.S. at 585 (emphasis added). In contrast, as Judge Humetewa correctly explained, ARPA "will not revoke any federal funding Arizona enjoyed prior to accepting. The downside to declining the ARPA funds is just that—Arizona would not have received ARPA funds." *Arizona*, 550 F. Supp. 3d at 799.

Nothing in *NFIB* turned on the sheer amount of federal funding alone, divorced from whether it is being newly provided or eliminated. To the contrary, *all* Justices in *NFIB* agreed that, despite the amount of funding at issue, "Congress could have made just the *new* funding provided under the ACA contingent on acceptance of the terms of the Medicaid Expansion." *NFIB*, 567 U.S. at 687–88 (joint dissent); *id.* at 576, 585 (plurality) (same); *id.* at 624–46 (Ginsburg, J., concurring in part) (finding no coercion). That's what ARPA does here: if a State misuses ARPA funds, it only loses the amount of funds it misused; no preexisting federal funding is lost. 42 U.S.C. § 802(e); Defs.' Mot. at 14–15. And Arizona's reliance on two district court decisions that ignore the Supreme Court's analysis—one already vacated on appeal and one pending on appeal—is no reason for this Court to do the same. *See* Pl.'s Opp'n at 11–13 (citing *Kentucky v. Yellen*, 563

F. Supp. 3d 647, 657 (E.D. Ky. 2021) and *Texas v. Yellen*, --- F. Supp. 3d. ---, 2022 WL 1063088, at *5 (N.D. Tex Apr. 8, 2022)); *id.* at 11 n.5.  If this Court faithfully applies *NFIB*, as Judge Humetewa did, Arizona's coercion claim can be easily rejected.

### III.   THE OFFSET PROVISION RELATES TO ARPA'S PURPOSES.

Arizona's relatedness claim should also be dismissed.  Again, the complaint alleges a relatedness claim only insofar as the offset provision is interpreted as "prohibit[ing] the States from cutting taxes in essentially any manner." *See* Defs.' Mot. at 16; *Arizona*, 550 F. Supp. 3d at 795 (noting that Arizona's claim arises only "under the problematic interpretation").  And again, that no-tax-cuts interpretation is both wrong and repeatedly rejected by the Treasury Department.  *See* Section II., *supra*.

In any event, a condition "that public funds [are] spent for the purposes for which they were authorized," like the offset provision, is a paradigmatic example of a condition that is related to the purposes of the statute.  *Rust v. Sullivan*, 500 U.S. 173, 196 (1991).  The offset provision specifies how States may use the newly appropriated federal funds to ensure that they serve the public-health and economic-recovery purposes of the Act.  *See Sabri v. United States*, 541 U.S. 600, 608 (2004); *Oklahoma v. U.S. Civ. Serv. Comm'n*, 330 U.S. 127, 143 (1947).  This sort of condition easily satisfies the relatedness requirement of the Spending Clause, and more than meets the "minimal standard of rationality."  *Benning v. Georgia*, 391 F.3d 1299, 1308 (11th Cir. 2004); *Mayweathers*, 314 F.3d at 1067 (conditions need only "bear some relationship to the purpose of the federal spending"); *City of Los Angeles*, 929 F.3d at 1175 (recognizing that the relatedness standard "is not demanding" and that "the Court has never struck down a condition on federal grants based on this relatedness prong"); *New York v. United States*, 505 U.S. 144, 172 (1992) (finding sufficient relation where "both the conditions and the payments embody Congress' efforts to address the pressing problem of radioactive

waste disposal"); *South Dakota v. Dole*, 483 U.S. 203, 208–09 (1987) (finding that the federal interest in a uniform drinking age was sufficiently related to States' receipt of highway funds).

Arizona does not engage with Defendants' argument, Defendants' cited cases, or the relevant legal standard. Instead, the State quibbles with Congress's policy choice embodied in the offset provision. *See* Pl.'s Mot. at 13–14. But that objection is wrongly premised on the idea that the offset provision prohibits "states from making any tax reductions—no matter the justification or causal relationship to ARPA funds[.]" *Id.* at 13. Again, that's not what the offset provision means; no party is advocating for that interpretation and Treasury has repeatedly rejected it. *See* Section I–II., *supra*. And although Arizona emphasizes that ARPA itself provides tax relief (while they regard the offset provision as inhibiting state tax relief), that policy choice was for Congress to make. Pl.'s Opp'n at 13–14. All that matters here is whether the offset provision "bear[s] some relationship to the purpose of the federal spending." *Mayweathers*, 314 F.3d at 1067 (quoting *New York*, 505 U.S. at 167). It does. Congress did not provide the Rescue Plan funds to replace purposeful decreases in net tax revenue; it provided the money to help States economically recover from the pandemic in ways they otherwise could not. Defs.' Mot. at 16.

## CONCLUSION

The Court should dismiss this case or enter judgment for Defendants. *See Air Line Pilots Ass'n v. Alaska Airlines, Inc.*, 898 F.2d 1393, 1397 n.4 (9th Cir. 1990).

| | | |
|---|---|---|
| 1 | DATED: December 23, 2022 | Respectfully submitted, |
| 2 | | |
| 3 | | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
| 4 | | |
| 5 | | ALEXANDER K. HAAS<br>Director, Federal Programs Branch |
| 6 | | |
| 7 | | BRIGHAM J. BOWEN<br>Assistant Director, Federal Programs Branch |

*/s/ Stephen Ehrlich*
MICHAEL P. CLENDENEN
STEPHEN EHRLICH
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-9803
Email:  stephen.ehrlich@usdoj.gov

*Counsel for Defendants*